**JUDGE MARRERO**

**08 CV 5359**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACEY CHERNY, an individual, on his own behalf and on behalf of all similarly situated, | No. |
| Plaintiff, | |
| v. | |
| EMIGRANT BANK, a New York State Chartered Savings Bank, and DOES 1 to 100, persons unknown, | |
| Defendants. | |



### CLASS ACTION COMPLAINT

Stacey Cherny ("Cherny" or "Plaintiff"), for his Complaint, alleges as follows upon information and belief, based upon the investigation conducted by and through his attorneys, except as to those allegations pertaining to Plaintiff and his counsel personally, which are alleged upon knowledge:

#### Nature of the Claim

1. This case concerns Emigrant Bank ("Emigrant"). Emigrant has a division, EmigrantDirect, which offers consumers money-market depository accounts through a web-based account management interface. Emigrant has disclosed the private email addresses of its EmigrantDirect accountholders to spammers, who have sent illicit commercial email to accountholders' private email addresses. Emigrant's disclosure of these email addresses is tortious and may indicate a systematic security breach by the company.

2. This is a class action brought on behalf of the EmigrantDirect accountholders (the "Class"). Emigrant's disclosure of its accountholders' email addresses not only facilitated the transmission of spam to its accountholders, it violated its fiduciary duties and the provisions of its privacy policy. On behalf of the Class, Plaintiff seeks equitable relief, damages and injunctive relief under New York General Business Law § 349, and equitable relief and damages for breach of fiduciary duty, breach of

contract and fraud, fraudulent concealment, constructive fraud and negligent misrepresentation.

## Parties

3.    **Plaintiff Stacey Cherny:** Stacey Cherny is a citizen of Canada, the U.S. and the U.K and a resident of Hong Kong. His last state of residence in the U.S. was Colorado. Cherny is an accountholder at Emigrant. Cherny maintains a domain name, and provides that domain name with email and web (http) services. Cherny also provides users of his domain name with email service (including separate email accounts, forwarding, filtering, technical support services, and disposable email accounts).

4.    **Defendant Emigrant Bank:** Emigrant Bank is a New York State chartered savings bank with offices at 5 East 42nd Street, New York, New York 10017 and 13 Croton Avenue, Ossining, New York 10562. Emigrant was founded in 1850 and grew to become the nation's largest savings bank by the 1920s. As of December 31, 2006, Emigrant has approximately $13.8 billion in assets and more than $890 million in net worth. In combination with its affiliated regional banks, Emigrant has 650,000 accounts, $17.3 billion in assets, and more than $1.1 billion in net worth. EmigrantDirect is the online banking division of Emigrant Bank. Emigrant offers accountholders money-market accounts with a web-based interface through its EmigrantDirect division. See https://www.emigrantdirect.com/EmigrantDirectWeb/login/FAQ.jsp#1.

5.    **Defendants Does:** Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sue such defendants by such fictitious names.

6.    Plaintiff alleges on information and belief that Doe defendants were at all relevant times acting as Emigrant's agents, ostensible agents, partners and/or joint venturers and employees, and that all acts alleged herein occurred within the course and scope

of said agency, employment, partnership, and joint venture, or enterprise; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with the other allegations.

### Jurisdiction, Venue and Choice of Law

7.  Emigrant is a New York State chartered banking association whose principal place of business/locality of business is in New York. Its sole U.S. offices are in New York, and Emigrant has sole citizenship in the State of New York, pursuant to 28 U.S.C. § 1332 and/or U.S.C. § 1348. The members of the Class include members scattered throughout the fifty states (including the 49 states outside of New York) and the U.S. territories, as well as various foreign states: there is minimal diversity of citizenship between the proposed Class members and Emigrant. The aggregate of claims asserted exceed the sum or value of $5,000,000. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).

8.  This Court has personal jurisdiction over the Defendant under N.Y. C.P.L.R. 301, because some of the acts alleged herein were committed in New York (and, specifically, the Southern District of New York), Defendant is chartered by New York State and Defendant does business in New York and has systematic and continuous operations in New York.

9.  Venue is also proper before this Court under 28 U.S.C. § 1391(a)(1), (2), (3) and/or (c).

10. In addition to the above, Plaintiff and the other Class members note that EmigrantDirect's "Internet Banking Agreement" states the following:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York. The account relationship established herein shall be governed by the law of the State of New York without regard to the conflicts of law provisions thereof. In establishing an account herein, the depositor agrees that the United States courts sitting in the State of New York shall have jurisdiction over it, and that the venue of any such action shall be the Southern district of New York. By opening this account, the depositor hereby waives any objection to such

jurisdiction and venue.

<u>See</u> "Internet Banking Agreement" at https://www.emigrantdirect.com.

11.   EmigrantDirect's server is kept in New York, its deposit accounts are kept in New York, its web files are located in New York and its services are performed in New York.

## Factual Background

12.   EmigrantDirect offers the "American Dream Savings Account," a money-market account that accountholders operate via a web-based account management interface.

13.   Prior to opening such an account, EmigrantDirect collects a variety of personal and private information from accountholders, including name, gender, current and previous address, birth date, telephone numbers, email address, citizenship status, mother's maiden name, Social Security number, and driver's license number (or an equivalent).

14.   EmigrantDirect accountholders can deposit and withdraw funds from their EmigrantDirect account by transferring funds electronically from an account at third-party financial institutions (most typically, an ordinary consumer bank account) through an Automated Clearing House ("ACH").

15.   Consequently, EmigrantDirect accountholders must provide information regarding their account at the third-party financial institution to Emigrant.

16.   **Emigrant's Privacy Statement ("Privacy Statement"):** At all times relevant to this Complaint, Emigrant published a Privacy Statement which indicated that Emigrant would not disclose the personal information it collects to third parties. The relevant portion of the Privacy Statement has been reproduced below:

Our Business Practices

. . . .

* We treat all personal and financial information about you in a confidential manner. This information may be obtained directly from you, or may be collected from other sources, or may result from applications you process with us.

* We maintain physical, electronic and procedural safeguards to protect customer information. We utilize state-of-the art technology for this purpose and upgrade, when appropriate, to improve our privacy protection performance.

* We limit access to your personal and financial information to those of our employees, agents and service providers that are required to have access to it in order to meet your financial needs or conduct our business.

* All of our employees, agents and service providers are responsible for compliance with the policies and procedures we have established to safeguard your personal and financial information.

* Our employees are governed by Emigrant's Code of Conduct, which expressly requires the confidentiality of customer information, and our employees receive training in the importance of adhering to the procedures we've established to assure that confidentiality.

* Our data processing and electronic operations are performed in a secure technical environment that is accessed only by authorized personnel to transact legitimate business operations.

* We maintain electronic safeguards to protect customer privacy on our websites. This assures that when you conduct your business with us from your home or office, the privacy of your relationship and the information you furnish us online is protected.

Emigrant's "Consumer Privacy Policy," at https://www.emigrantdirect.com/ EmigrantDirectWeb/information/consumer/PrivacySecurity.jsp (Feb. 2007). The Privacy Statement does allow certain disclosures of accountholder's personal information, but none that apply here. The spam received by Plaintiff was not consistent with these exceptions.

17.  **Cherny Receives Spam:** In or about mid-2006, Cherny provided Emigrant with a unique email address ("Email Address"): Cherny never otherwise published, used, or provided the Email Address to any other person. Consequently, the only persons who had the Email Address were Emigrant and Cherny.

18.  Nonetheless, shortly thereafter, Cherny began to receive spam, as alleged in more detail below, at the Email Address. All told, Cherny received hundreds of spam messages at the Email Address.

19.  Cherny never received spam at any other email addresses at his domain name that would indicate that the spam sent to the Email Address was merely part of a "dictionary" attack. (In a dictionary attack, spammers attempt to send spam to email

addresses at a particularly domain name by methodically guessing and/or testing which email addresses are valid.)

20. Cherny maintains the domain name for the Email Address. The server that provides email service to Cherny's domain name is maintained, stored, and given Internet connectivity by a third party with whom Cherny contracts. The transmission of spam sent to the Email Address consumes Internet connectivity, storage space, and processing capacity on this email server. This server is used in interstate and foreign commerce and communication.

21. **Spam Traceable to Emigrant:** Having eliminated any other possibility, Cherny and his counsel conclude that Emigrant disclosed the Email Address to third parties, which sent the spam to the Email Address.

22. Because Cherny's Email Address was unique to EmigrantDirect and was not shared with anyone but Emigrant, Plaintiff can isolate a collection of spam that is uniquely traceable to Emigrant's disclosure of this Email Address ("Traced Spam"). Spammers, as a rule, automate the transmission of digitally identical messages to multiple recipients: a statistically sound sampling of Class members will prove, by a preponderance of evidence, that particular Traced Spam messages sent to the sampled Class members were in fact sent to all Class members.

23. **Potential Ongoing Security Breach at Emigrant:** The spam received by Plaintiff is indelible proof that Emigrant has disclosed accountholders' email addresses to spammers, either inadvertently or intentionally.

24. In the context of an ongoing security breach, the following portion of Emigrant's Privacy Statement **would be misleading**: "[w]e treat all personal and financial information about you in a confidential manner." Likewise, the portions of the Privacy Statement below are also misleading:

> * "We maintain physical, electronic and procedural safeguards to protect customer information. We utilize state-of-the art technology for this purpose and upgrade, when appropriate, to improve our privacy protection performance."

> * "We limit access to your personal and financial information to those of our

employees, agents and service providers that are required to have access to it in order to meet your financial needs or conduct our business."

    * "Our data processing and electronic operations are performed in a secure technical environment that is accessed only by authorized personnel to transact legitimate business operations."

    * "We maintain electronic safeguards to protect customer privacy on our websites. This assures that when you conduct your business with us from your home or office, the privacy of your relationship and the information you furnish us online is protected."

Emigrant's "Consumer Privacy Policy," at https://www.emigrantdirect.com/ EmigrantDirectWeb/information/consumer/PrivacySecurity.jsp (Feb. 2007). To the extent Emigrant knew that there was a security breach and knew that it was disclosing accountholders' email addresses, Emigrant must have also known these statements were false.

25.    An ongoing security breach at Emigrant would be problematic on several levels. First, if Emigrant cannot secure its information system, accountholders cannot be sure that the funds and securities in their account are safe from diversion. If spammers can steal email addresses from Emigrant, they may also be able to divert funds.

26.    Second, inasmuch as Emigrant knows there is an ongoing security breach, the Privacy Statement's representations are rendered knowingly and intentionally misleading. In this light, Emigrant may be enticing new accountholders to provide personal information (and maintaining current accountholders) under the representation that such information is secure from third parties, when it knows (or should know) that representation is false.

27.    Third, Emigrant is generally privy to a wealth of sensitive personal and financial information regarding its accountholders – without any information about the scope of the security breach, accountholders must presume this information is unacceptably vulnerable and that they are exposed to identity theft.

28.    At least with respect to New York residents, Emigrant is required to disclose suspected security breaches to its accountholders under the New York State

Information Security Breach and Notification Act (the "NY Security and Notification Act"), New York State General Business Law § 899-aa (McKinney 2007) (NY Gen Bus § 899-aa). If there is a security breach, Emigrant may have violated its statutory duties to disclose the same to New York residents. While the disclosure of emails alone does not trigger NY Gen Bus § 899-aa, it is improbable that Emigrant's information security failed with respect to accountholders' email addresses, but managed to protect accountholders' private information (as defined under NY Gen Bus § 899-aa(b)).[1]

29.    **Alternatively, Disclosure of Email Addresses Was Intentional:** Plaintiff alleges, on information and belief, that Emigrant's disclosure of its accountholders' email addresses was unintentional and the result of a security breach. In the alternative, Plaintiffs allege that Emigrant's disclosure of its accountholders' email addresses was intentional.

### Class Certification Allegations

30.    Plaintiff seeks certification of a Class under both Rule 23(b)(2) and Rule 23(b)(3).

31.    The Class asserts claims for violations of § 349 of New York's General Business Law, breach of fiduciary duty, breach of contract, fraud, fraudulent concealment, constructive fraud and/or negligent misrepresentation on behalf of all EmigrantDirect accountholders. Each of these causes of action is deemed alternative theories whenever not doing so would result in a contradiction with the other causes of action.

32.    **Definition of the Class:** Pursuant to Federal Rule of Civil Procedure 23, Cherny brings this Complaint against Emigrant on behalf of himself and all persons who are accountholders of Emigrant. Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants'

---

[1] Similar statutes exist in other states as well, including Arkansas, California, Connecticut, Florida, Georgia, Illinois, Indiana, Maine, Minnesota, Montana, Nevada, North Dakota, Tennessee, Texas, and Washington, and apply to residents of such states.

subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

33.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class, and have retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

34.    **Class Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown and is not available to Cherny, but it is clear that individual joinder of all Class members is impracticable. As stated above, Emigrant had approximately 650,000 accounts as of December 31, 2006.

35.    **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by each individual member of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for the Class members individually to obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain individual litigation, it would still not be preferable to a class action because given the complex legal and factual controversies presented in this Complaint, individual litigation would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

36. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Defendants' policies challenged herein apply and affect Class members uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

37. **Class Typicality:** Cherny's claims are typical of the claims of other Class members, as Cherny and the other Class members sustained damages arising out of Defendants' wrongful conduct, based upon the same transactions/conduct, which were made uniformly to Cherny and the other Class members.

38. **Class Commonality:** Common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual Class members. These common questions include, but are not limited to, the following:

   (a) Whether Emigrant exposed or provided email addresses of the Class members to spammers and whether Emigrant disclosed or exposed other personal or private information of the Class members to third parties;

   (b) Whether such exposure violated Emigrant's Privacy Statement;

   (c) Whether such exposure was intentional or unintentional on Emigrant's part;

   (d) Whether the Privacy Statement was fraudulent or misleading in any way;

   (e) Whether the Privacy Statement contained or omitted material facts;

   (f) Whether Defendants intended the consuming public to rely on Emigrant's Privacy Statement;

   (g) Whether Emigrant's Privacy Statement was an unlawful, unfair, deceptive and/or fraudulent business practice under New York's General Business Law § 349;

   (h) Whether Emigrant owed the Class members a fiduciary duty by its collection of personal and private information under the Privacy Statement;

   (i) Whether Emigrant breached such fiduciary duties through the violation of its Privacy Statement;

(j)    Whether Emigrant failed to fully and accurately disclose the exposure and provision of Class members' email addresses to spammers and/or any underlying security breach;

(k)    Whether Emigrant's failure to disclose any security breach was unlawful under New York State General Business Law § 899-aa;

(l)    Whether, in light of its fiduciary duties, Emigrant's failure to disclose any security breach violated its fiduciary duties to the Class members;

(m)    Whether the Privacy Statement is a valid contract and whether Defendants' exposure of the Class members' personal and private information and other conduct constituted a breach of the contract;

(n)    Whether Defendants' misrepresentations and/or omissions in the Privacy Statement constituted fraud, fraudulent concealment, constructive fraud and/or negligent misrepresentation; and

(o)    Whether Plaintiff and the Class are entitled to relief, and the nature of such relief.

**Count I: Violation of Section 349 of New York General Business Law:**
**Deceptive Acts and Practices**

39.    Plaintiff incorporates the foregoing allegations by reference.

40.    Defendants intended the consuming public to rely on the accuracy of Emigrant's Privacy Statement. Defendants misrepresented and/or omitted mention of certain material facts in its Privacy Statement to consumers.

41.    Defendants' conduct as alleged herein is inconsistent with 15 U.S.C. § 6802 and the *Interagency Guidance on Response Programs for Unauthorized Access to Customer Information and Customer Notice*, 68 Fed. Reg. 47,954 (Aug. 12, 2003).

42.    The misrepresentations and/or omissions with regard to Emigrant's Privacy Statement were likely to mislead a reasonable consumer, and Plaintiff and the Class members were deceived by such misrepresentations and/or omissions.

43.    The terms of the Privacy Statement and the security of accountholders' personal and private information were material to consumers deciding to utilize Emigrant's services. Plaintiff and the other Class members would not have opened accounts, deposited their account balances, and/or provided personal information to Emigrant had they known of the misrepresentations and/or omissions contained in the Privacy Statement and the full nature of the facts relevant to the security of accountholders'

personal and private information.

44.  Among other things, Defendants made misrepresentations or omissions of material fact in its Privacy Statement regarding: (1) the treatment of the accountholders' personal and financial information; (2) the employment of physical, electronic and/or procedural safeguards to protect customer information; (3) the control of access to accountholders' personal and financial information; (4) the compliance and enforcement of the terms of the Privacy Statement; (5) the training and supervision of employees; (6) the performance of data processing and electronic operations; and (7) the maintaining of its websites.

45.  For example, the Privacy Statement was deceptive in that it concealed the facts that Defendants were (1) disclosing accountholders' personal and/or private information to third parties, including the disclosure of its accountholders' email addresses to spammers; (2) not maintaining physical, electronic and procedural safeguards to protect customer information; (3) not limiting access to the Class members' personal and financial information to those of Emigrant's employees, agents and service providers that are required to have access to it in order to meet the Class members' financial needs or to conduct Emigrant's business; (4) not performing processing and electronic operations in a secure technical environment that is accessed only by authorized personnel to transact legitimate business operations; (5) not maintaining electronic safeguards to protect customer privacy on Emigrant's websites; and (6) not assuring that the privacy of the Class members' relationship with Defendants and the information furnished by Class members to Emigrant online is protected.

46.  The above misrepresentations/omissions constitute unlawful, unfair, deceptive and fraudulent business practices.

47.  Defendants' conduct constitutes acts, uses, or employment by Defendants and/or their agents or employees of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others

rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of services, and with the subsequent performance of services and transactions, in violation of § 349 of New York's General Business Law.

48.    The unfair and deceptive trade acts and practices of Defendants have directly, foreseeably and proximately caused damages and injury to Plaintiff and the other members of the Class.

49.    Defendants' violations of § 349 of New York's General Business Law have damaged Plaintiff and the other Class members, and threaten additional injury if the violations continue. The value of Class members' account balance with Emigrant has been impaired by the loss of the benefit of bargain, which was premised, in part, on Defendants' compliance with the Privacy Statement and full disclosure of facts relevant to the security of accountholders' information. In addition, the damage to Plaintiff and the other Class members includes the lost time required to sort, read, discard and attempt to prevent future Traced Spam, and lost storage space, Internet connectivity, processing power and computing resources on the personal computers on which they received the Traced Spam. The Class members have incurred damages by the lost or diminished value of their personal and private information and/or conversion of their personal and private information, which is no longer confidential. Such personal and private information has a value on the black market, which is readily ascertainable. Further, Class members are subject to identity theft to the extent Emigrant's security has been breached.

50.    Plaintiff and the other members of the Class have no adequate remedy at law.

51.    Plaintiff, on his own behalf and behalf of the Class members, seeks damages, injunctive relief, including an order enjoining Defendants' § 349 violations alleged herein, and court costs and attorneys' fees, pursuant to NY CLS Gen Bus § 349(h).

## Count II: Breach of Fiduciary Duty

52.    Plaintiff incorporates the foregoing allegations by reference.

53.  Defendants possessed exclusive knowledge and expertise with respect to Emigrant's handling and protection of accountholders' personal and private information, and therefore, Plaintiff and the Class members reasonably relied on Defendants' superior knowledge and expertise.  Among other things, Plaintiff and the Class members reasonably relied on the accuracy of the Privacy Statement and relied on the Defendants to act in accordance with their terms.

54.  Through use of the Privacy Statement and acceptance of its terms, Defendants solicited Plaintiff and the Class members and were empowered with the responsibility of safeguarding the accountholders' personal and private information. Plaintiff and the Class members were prevented from effectively protecting the confidentiality of their own personal and private information.

55.  Plaintiff and the Class members reposed trust and confidence in Defendants, who exercised discretionary functions for the benefit of Plaintiff and the Class members. Such discretionary functions included without limitation: (1) the treatment of the accountholders' personal and financial information; (2) the employment of physical, electronic and/or procedural safeguards to protect customer information; (3) the control of access to accountholders' personal and financial information; (4) the compliance and enforcement of the terms of the Privacy Statement; (5) the training and supervision of employees; (6) the performance of data processing and electronic operations; and (7) the maintaining of its websites.

56.  As their bank and/or employees or agents of the bank, Emigrant and the Does owed all Class members a fiduciary duty to safeguard personal identifying information. Emigrant further owed a fiduciary duty to disclose all material facts within its knowledge relating to its failure to safeguard personal identifying information. Failure to safeguard personal and private identifying information given to Emigrant is a material fact because exposure of accountholders' personal and private information subjects the accountholders to spam and increased risk of identity theft.

57.   Defendants also owed the Class members a fiduciary duty based on the representations made in the Privacy Statement. In fact, the Privacy Statement states, in part, "[at] Emigrant, we recognize that our relationship with you is based on trust." Emigrant's "Consumer Privacy Policy," supra. Defendants were aware that the Privacy Statement was to be used for particular purpose and that potential accountholders would rely on Defendants to act in accordance with the Privacy Statement. Thus, Defendants owed a duty to the accountholders to protect their personal private information for the benefit of the accountholders.

58.   Among other things, Emigrant breached its fiduciary duties by: (1) disclosing accountholders' personal and/or private information to third parties, including the disclosure of its accountholders' email addresses to spammers; (2) not maintaining physical, electronic and procedural safeguards to protect customer information; (3) not limiting access to the Class members' personal and financial information to those of Emigrant's employees, agents and service providers that are required to have access to it in order to meet the Class members' financial needs or to conduct Emigrant's business; (4) not performing processing and electronic operations in a secure technical environment that is accessed only by authorized personnel to transact legitimate business operations; (5) not maintaining electronic safeguards to protect customer privacy on Emigrant's websites; (6) not assuring that the privacy of the Class members' relationship with Defendants and the information furnished by Class members to Emigrant online is protected; (7) its failure to correct the deception created by the Privacy Statement; and (8) its failure to the extent Emigrant fails to disclose the events that led to the disclosure of its accountholders' email addresses to spammers.

59.   Emigrant's breach of its fiduciary duties has caused damage to Plaintiff and the other Class members and threatens additional damage in the future. The value of Class members' account balance with Emigrant has been impaired by the loss of the benefit of bargain, which was premised, in part, on Defendants' compliance with the

Privacy Statement and full disclosure of facts relevant to the security of accountholders' information. In addition, the damage to Plaintiff and the other Class members includes the lost time required to sort, read, discard and attempt to prevent future Traced Spam, and lost storage space, Internet connectivity, processing power and computing resources on the personal computers on which they received the Traced Spam. The Class members have incurred damages by the lost or diminished value of their personal and private information and/or conversion of their personal and private information, which is no longer confidential. Such personal and private information has a value on the black market, which is readily ascertainable. Further, Class members are subject to identity theft to the extent Emigrant's security has been breached.

60.  Plaintiff, on his own behalf and behalf of the other Class members, seeks compensatory damages in an amount to be determined at trial and injunctive or equitable relief (including an accounting and an order enjoining Defendants' ongoing breach, as alleged herein), as well as interest and costs.

## Count III: Breach of Contract

61.  Plaintiff incorporates the foregoing allegations by reference.

62.  Emigrant's Privacy Statement constituted a contract between Defendants and the Class members. Defendants undertook a contractual obligation by and between Emigrant and the consumers with whom it transacted business by publishing the Privacy Statement on its website or otherwise disclosing such Privacy Statement to its consumers. Such public assurances created an obligation under the contract and a duty on the part of Defendants and the persons with whom it did business not to act in derogation of Emigrant's Privacy Statement.

63.  In consideration of the above contract, Plaintiff and the Class members placed deposits with EmigrantDirect.

64.  Plaintiff and the other Class members read and relied on the Privacy Statement prior to becoming accountholders at EmigrantDirect.

65.   Among other things, Defendants breached the contract by: (1) disclosing accountholders' personal and/or private information to third parties; (2) not maintaining physical, electronic and procedural safeguards to protect customer information; (3) not limiting access to the Class members' personal and financial information to those of Emigrant's employees, agents and service providers that are required to have access to it in order to meet the Class members' financial needs or to conduct Emigrant's business; (4) not performing processing and electronic operations in a secure technical environment that is accessed only by authorized personnel to transact legitimate business operations; (5) not maintaining electronic safeguards to protect customer privacy on Emigrant's websites; and (6) not assuring that the privacy of the Class members' relationship with Defendants and the information furnished by Class members to Emigrant online is protected.

66.   But for Defendants' disclosure of the email addresses of Plaintiff and the Class members, the Traced Spam would not have been sent to those email addresses. Hence, the transmission of spam to those email addresses was a reasonably foreseeable consequence of Emigrant's disclosure and breach of contract.

67.   Defendants' breach of contract has damaged Plaintiff and the other Class members and threatens additional injury in the future. The value of Class members' account balance with Emigrant has been impaired by the loss of the benefit of bargain, which was premised, in part, on Defendants' compliance with the Privacy Statement and full disclosure of facts relevant to the security of accountholders' information. In addition, the damage to Plaintiff and the other Class members includes the lost time required to sort, read, discard and attempt to prevent future Traced Spam, and lost storage space, Internet connectivity, processing power and computing resources on the personal computers on which they received the Traced Spam. The Class members have incurred damages by the lost or diminished value of their personal and private information and/or conversion of their personal and private information, which is no longer confidential. Such personal and private information has a value

on the black market, which is readily ascertainable. Further, Class members are subject to identity theft to the extent Emigrant's security has been breached.

68. Plaintiff, on his own behalf and behalf of the other Class members, seeks injunctive relief (including an accounting and an order enjoining Defendants' ongoing breach, as alleged herein), damages, interest, and costs.

### Count IV: Fraud, Fraudulent Concealment, Constructive Fraud and/or Negligent Misrepresentation

69. Plaintiff incorporates the foregoing allegations by reference.

70. As alleged above, at all relevant times and through the present, the parties were in a fiduciary or confidential relationship.

71. At all relevant times and through the present, the Privacy Statement contained false representations or omissions of material facts.

72. As alleged herein, at all relevant times and through the present, Emigrant posted on their website a Privacy Statement that contained false information. At the time this representation was made, Defendants knew or should have known the true facts regarding the falsity of the Privacy Statement, as detailed above, but fraudulently concealed or misrepresented the true facts.

73. Defendants' willful or negligent concealment and/or failures to disclose were made with the intent to induce Plaintiff and the other Class members' justifiable reliance, and in fact did so, as evidenced by their utilization of Emigrant's services.

74. Plaintiff and other Class members, unaware of Defendants' concealment or suppression of said material facts, utilized Emigrant's services, reasonably relying on the misleading representations and omissions of Emigrant. Plaintiff and other Class members could not have discovered, in the exercise of reasonable diligence, Emigrant's fraud/misrepresentations and failures to disclose. Had Plaintiff and the other members of the Class known of the concealed facts, they would not have utilized Emigrant's services.

75.   As a proximate result of the foregoing acts and omissions, Plaintiff and the Class have suffered damages and will suffer additional damages if the violations continue, as alleged above.

76.   Plaintiff, on his own behalf and behalf of the Class, seeks compensatory and punitive damages in an amount to be determined at trial and injunctive relief or other equitable relief (including an accounting and an order enjoining Defendants' ongoing violations, as alleged herein), and costs.

**WHEREFORE**, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendants as follows:

(a)   Certifying the action as a class action and designating Plaintiff and their counsel as representatives of the Class;

(b)   With respect to Counts I, II, III, and IV injunctive and equitable relief for the Class, including an order for accounting and an order enjoining the misconduct alleged herein;

(c)   With respect to Counts I, II, III and IV compensatory damages in an amount to be determined at trial for the Class;

(d)   With respect to Count I, reasonable costs and attorneys' fees;

(e)   Awarding pre- and post-judgment interest; and

(f)   Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated: June 9, 2008

KAMBEREDELSON LLC

By: *Jennifer Feldscher*

JENNIFER FELDSCHER
One of the attorneys for Plaintiff Stacey Cherny, individually and on behalf of a class of similarly situated individuals

Scott A. Kamber
Dana Rubin
Jennifer Feldscher
KAMBEREDELSON LLC
11 Broadway, 22d Floor
New York, NY 10004
skamber@kamberedelson.com
jfeldscher@kamberedelson.com


Jay Edelson
Ethan Preston
KAMBEREDELSON LLC
53 West Jackson Blvd.
Suite 550
Chicago, IL 60604
jedelson@kamberedelson.com
epreston@kamberedelson.com