UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
STACEY CHERNY, an individual, on his own      :
behalf and on behalf of all similarly situated, :
                                               :      08 CV 5359 (VM)
                    Plaintiff,                  :
                                               :
         v.                                    :
                                               :
EMIGRANT BANK, a New York State               :
Chartered Savings Bank, and                    :
DOES 1 to 100, persons unknown,                :
                                               :
                    Defendants.                :
------------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## BY EMIGRANT BANK
## <u>TO DISMISS THE COMPLAINT</u>

Date: July 31, 2008

**CONSTANTINE CANNON LLP**

Robert L. Begleiter
Gordon Schnell
Alissa Ifowodo

450 Lexington Avenue
New York, New York 10017
(212) 350-2700

*Counsel for Emigrant Bank*

106206.1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

ALLEGATIONS IN THE COMPLAINT ...............................................................................2

I.      THE PARTIES...........................................................................................................2

      A.  Defendant ...................................................................................................2
      B.  Plaintiff   ...................................................................................................3

II.     THE ALLEGED MISCONDUCT ...........................................................................4

      A.  The Alleged Spam Messages.......................................................................4
      B.  The Theoretical Security Breach .................................................................5
      C.  Violations of Emigrant's Privacy Statement................................................5

III.    THE ALLEGED INJURY .......................................................................................5

IV.     THE CLASS ALLEGATIONS................................................................................6

V.      CLAIMS ASSERTED .............................................................................................7

      A.  New York GBL Section 349........................................................................7
      B.  Breach of Fiduciary Duty............................................................................8
      C.  Breach of Contract ......................................................................................8
      D.  Fraud/Negligent Misrepresentation ............................................................8

ARGUMENT.........................................................................................................................9

I.      THE 12(b)(6) STANDARD......................................................................................9

II.     EACH OF CHERNY'S CLAIMS FAILS UNDER *TWOMBLY* ........................................10

III.    EACH OF CHERNY'S CLAIMS ALSO FAILS FOR NOT ALLEGING A LEGALLY
      COGNIZABLE INJURY......................................................................................11

IV.     EACH OF CHERNY'S CLAIMS ALSO FAILS FOR NOT SATISFYING
      ADDITIONAL ELEMENTS OF THE INDIVIDUAL CLAIMS FOR RELIEF..............13

      A.  The Section 349 Claim Also Fails for Not Alleging Consumer-Oriented Conduct or
          Any Actual Deceptive Acts .......................................................................13

          1.      There Is No Allegation of Consumer-Oriented Conduct...........................14
          2.      There Is No Allegation of Actual Deceptive Conduct...............................14

106206.1

B. The Breach of Fiduciary Duty Claim Also Fails for Not Properly Alleging a Fiduciary Relationship Between Emigrant and Cherny............................15

C. The Breach of Contract Claim Also Fails for Not Properly Alleging an Enforceable Contract That Has Been Breached...........................................................17

D. The Fraud/Negligent Misrepresentation Claims Also Fail for Not Satisfying the Heightened Fraud Pleading Requirement or Alleging Any Kind of Special Relationship Between Emigrant and Cherny............................................................18

    1. The Complaint Fails to Satisfy the Heightened Pleading Requirement for Fraud ......................................................................................................18

    2. The Complaint Fails to Allege a Special Relationship Between Emigrant and Cherny ................................................................................................20

V. CHERNY'S CLASS ALLEGATIONS SHOULD ALSO BE DISMISSED OR STRICKEN.......................................................................................................................21

CONCLUSION......................................................................................................................22

106206.1

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, National Ass'n,*
    731 F.2d 112 (2d Cir. 1984) ................................................................. 15

*Abercrombie v. Andrew College,*
    438 F. Supp. 2d 243 (S.D.N.Y. 2006) .................................................. 19

*Allahabi v. N.Y. Life Ins. Co.,*
    1999 WL 126442 (S.D.N.Y. Mar. 10, 1999) ......................................... 14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007) .................................................................. 19

*Bakalar v. Vavra,*
    237 F.R.D. 59 (S.D.N.Y. 2006) ........................................................... 21

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007).................................................... 1, *passim*

*Berman v. Sugo LLC,*
    2008 WL 2414052 (S.D.N.Y. June 12, 2008) ...................................... 18

*Bermuda Container Line Ltd. v. Int'l Longshoremen's Ass'n, AFL-CIO,*
    192 F.3d 250 (2d Cir. 1999)................................................................ 20

*Brady v. Lynes,*
    2008 WL 2276518 (S.D.N.Y. June 2, 2008) ....................................... 17

*Cal Distrib., Inc. v. Cadbury Schweppes Ams. Beverages, Inc.,*
    2007 WL 54534 (S.D.N.Y. Jan. 5, 2007) ......................................... 16-17

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ................................................................ 13

*Cohen v. JP Morgan Chase & Co.,*
    498 F.3d 111 (2d Cir. 2007) ................................................................ 11

*Combustion Prods. Mgmt., Inc. v. AES Corp.,*
    2007 WL 4328829 (2d Cir. Dec. 10, 2007) ...................................... 17-18

*Conley v. Gibson,*
    355 U.S. 41 (1957)............................................................................... 9

*Dallas Aerospace Inc. v. CIS Air Corp.,*
    352 F.3d 775 (2d Cir. 2003)................................................................. 20

106206.1

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,*
   755 F.2d 239 (2d Cir. 1985) .................................................................................................. 20

*E. River Sav. Bank v. Sec'y of Housing & Urban Dev.,*
   702 F. Supp. 448 (S.D.N.Y. 1988) ....................................................................................... 20

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,*
   375 F.3d 168 (2d Cir. 2004) .................................................................................................. 21

*Feige v. RCN Corp.,*
   2008 WL 906070 (S.D.N.Y. Apr. 3, 2008) .......................................................................... 15

*First Investors Corp. v. Liberty Mut. Ins. Co.,*
   152 F.3d 162 (2d Cir. 1998) .................................................................................................. 12

*In re Elevator Antitrust Litig.,*
   502 F.3d 47 (2d Cir. 2007) .................................................................................................... 11

*Jones v. Commerce Bancorp, Inc.,*
   2006 WL 1409492 (S.D.N.Y. May 23, 2006) ..................................................................... 15

*Lava Trading Inc. v. Hartford Fire Ins. Co.,*
   326 F. Supp. 2d 434 (S.D.N.Y. 2004) ................................................................................. 14

*Leeds v. Meltz,*
   85 F.3d 51 (2d Cir.1996) ......................................................................................................... 9

*Louros v. Cyr,*
   175 F. Supp. 2d 497 (S.D.N.Y. 2001) ...................................................................... 13, 14, 15

*MaGee v. Paul Revere Life Ins. Co.,*
   954 F.Supp. 582 (E.D.N.Y.1997) ........................................................................................ 14

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,*
   244 F.R.D. 204, 212 (S.D.N.Y. 2007) ........................................................................... 12, 20

*Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield,*
   276 F.3d 123 (2d Cir. 2002)................................................................................................... 17

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank,*
   392 F.3d 520 (2d Cir. 2004) .............................................................................................. 12-13

*Obabueki v. Int'l Bus. Machs. Corp.,*
   145 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................................. 15

*O'Brien v. Nat'l Prop. Analysts Partners,*
   936 F.2d 674 (2d Cir. 1991) .................................................................................................. 19

*PFT of Am., Inc. v. Tradewell, Inc.,*
    1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ............................................................ 22

*Republic Nat'l Bank v. Hales,*
    75 F. Supp. 2d 300 (S.D.N.Y. 1999) .............................................................. 15-16

*Robin Bay Assocs. LLC,*
    2008 WL 2275902 (S.D.N.Y. June 3, 2008) ...................................................... 16

*SCS Commc'ns, Inc. v. Herrick Co.,*
    360 F.3d 329 (2d Cir. 2004) ............................................................................ 11

*Shafran v. Harley-Davidson, Inc.,*
    No. 07 Civ. 01365, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ........................... 12

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994) ............................................................................ 19

*Silva Run Worldwide Ltd. v. Gaming Lottery Corp.,*
    1998 WL 167330 (S.D.N.Y. Apr. 8, 1998) ...................................................... 20

*Smith v. Schweiker,*
    709 F.2d 777 (2d Cir. 1983) ............................................................................ 22

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.,*
    487 F.3d 89 (2d Cir. 2007) ............................................................................ 12

*Trikas v. Universal Card Servs. Corp.,*
    351 F. Supp. 2d 37 (E.D.N.Y. 2005) ........................................................ 15, 18

*Twinlab Corp. v. Signature Media Servs., Inc.,*
    1999 WL 1115237 (S.D.N.Y. Dec. 7, 1999) .................................................... 18

*Village on Canon v. Bankers Trust Co.,*
    920 F. Supp. 520 (S.D.N.Y. 1996) ............................................................ 20-21

*Wexner v. First Manhattan Co.,*
    902 F.2d 169 (2d Cir. 1990) ............................................................................ 19

*Wright v. Giuliani,*
    2000 WL 777940 (S.D.N.Y. 2000) ............................................................ 21, 22

State Cases

*Dimovich v. OnBank & Trust Co.,*
    662 N.Y.S.2d 644 (4th Dep't 1997) ................................................................ 14

106206.1

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ................................................................................................. 13, 14

<u>Federal Rules</u>

Federal Rule of Civil Procedure Rule 9(b) ................................................................. 18

Federal Rule of Civil Procedure Rule 11(b) ............................................................... 22

Federal Rule of Civil Procedure Rule 12(b)(6) ........................................................... 1

106206.1

Defendant Emigrant Bank ("Emigrant") moves pursuant to FRCP Rule 12(b)(6) to dismiss all of the claims brought against it by plaintiff Stacey Cherny ("Cherny").

## PRELIMINARY STATEMENT

Cherny's central claim in this case is that Emigrant's alleged disclosure of Cherny's email address caused Cherny to receive several hundred spam messages over some undisclosed period of time. But, Cherny does not allege any facts to support this alleged disclosure. Rather, Cherny concedes that the entire basis for his Complaint is the supposed elimination by him and his counsel of any other possible cause for the alleged spam. Cherny does not explain what these other possible causes might have been or how he and his counsel eliminated them. This kind of complaint -- which makes allegations consistent with both lawful and unlawful activity -- is precisely the type of pleading the Supreme Court recently condemned in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

For this reason, each of Cherny's claims -- violation of Section 349 of New York's General Business Law; breach of fiduciary duty; breach of contract; and fraud/negligent misrepresentation -- fails as a matter of law and should be dismissed. They should also be dismissed because Cherny has not alleged that his supposed receipt of spam has caused him any actual injury (for which he is entitled to any monetary, equitable, or injunctive relief). His only allegations relating to injury involve vague references to speculative and unsubstantiated harm such as lost time, lost computer storage space, and lost value of personal information. Fuzzy allegations like these cannot support any of Cherny's claims, each of which requires a clear showing of genuine injury.

Each of Cherny's claims also fails because they do not allege all of the required elements necessary to satisfy the claims. For example, Cherny's Section 349 claim does not specify the

deceptive practices in which Emigrant allegedly engaged; his breach of fiduciary duty claim does

not properly allege a fiduciary relationship between Cherny and Emigrant; his breach of contract

claim does not properly allege an enforceable contract that has been breached; and his fraud and

negligent misrepresentation claims do not properly allege the special relationship between

Emigrant and Cherny that would be necessary to support these claims.

Finally, Cherny's class allegations also fail because they do not define a class that could

ever be certified. Instead, they allege a class of all Emigrant accountholders without regard to

whether they have been subject to the alleged misconduct, whether they have suffered the

alleged injury, or even whether they actually have an EmigrantDirect account. As with Cherny's

basic allegations of wrongdoing and injury, such speculative, far-reaching, and fanciful

allegations not only fail as a matter of law, they are exactly the kind of baseless pleadings both

*Twombly* and FRCP 11 were intended to cure.

## ALLEGATIONS IN THE COMPLAINT

Emigrant sets forth below the facts relevant for this motion to dismiss. These facts come

directly from the allegations contained in Cherny's Complaint which -- solely for the purposes of

this motion and to the extent they are not merely conclusory -- Emigrant accepts as true.

## I. THE PARTIES

### A. Defendant

Emigrant is a New York State chartered savings bank with offices in New York City and

Ossining, New York. Compl. ¶ 4. EmigrantDirect is the online banking division of Emigrant.

*Id.* EmigrantDirect offers accountholders money market accounts "with a web-based interface."

*Id.* In combination with its affiliated regional banks, Emigrant has approximately 650,000

accounts. *Id.* ¶¶ 4, 34. The Complaint does not allege how many EmigrantDirect accounts there

are.

106206.1

Prior to opening an EmigrantDirect online money market account, "EmigrantDirect collects a variety of . . . information . . . , including name, gender, . . . address, birth date, telephone numbers, email address, citizenship status, mother's maiden name, Social Security number, and driver's license number (or an equivalent)." Compl. ¶ 13. "EmigrantDirect accountholders can deposit and withdraw funds from their EmigrantDirect account by transferring funds electronically from an [external] account at third-party financial institutions . . . through an Automated Clearing House." *Id.* ¶ 14. Consequently, Emigrant accountholders must also provide information regarding their accounts at third-party financial institutions. *Id.* ¶ 15.

### B.    Plaintiff

Cherny is an accountholder at Emigrant. Compl. ¶ 3. While the Complaint principally challenges conduct related to EmigrantDirect, it does not allege whether Cherny was even an accountholder of EmigrantDirect (as opposed to Emigrant). With respect to whatever type of Emigrant account Cherny does hold, he provided Emigrant in mid-2006 with a unique email address (the "Email Address"). *Id.* ¶ 17. Cherny claims he never otherwise published, used, or provided the Email Address to any other person. *Id.*

According to the Complaint, Cherny maintains the domain name for the Email Address. Compl. ¶ 20. In addition, the "server provid[ing] email service to Cherny's domain name is maintained, stored, and given Internet connectivity by a third party with whom Cherny contracts." *Id.* The Complaint does not identify who this third party is. Nor does it provide any detail on the nature of the relationship between Cherny and the third party, the access the third party had to the Email Address, what security protections -- if any -- this third party employed, and who else might have had access to the Email Address through the third party.

106206.1

## II.   THE ALLEGED MISCONDUCT

### A.   The Alleged Spam Messages

According to the Complaint, shortly after Cherny provided Emigrant with the Email Address, he began to receive spam at the Email Address. Compl. ¶ 18. Cherny claims ultimately to have "received hundreds of spam messages at the Email Address." *Id.* Cherny's central claim in this case is that Emigrant was directly responsible for the alleged spam messages because it "inadvertently or intentionally" released the Email Address to third parties. *Id.* ¶¶ 1, 21, 23.

The Complaint does not allege over what period of time Cherny received these alleged spam messages or whether the alleged spam activity is still occurring. Nor does the Complaint allege any facts, that if true, demonstrate that Emigrant was in any way responsible for these alleged spam messages. Indeed, the entire basis for Cherny's claim that Emigrant was responsible for the spam is pure speculation:

> Having eliminated any other possibility, Cherny and his counsel conclude that Emigrant disclosed the Email Address to third parties, which sent the spam to the Email Address.

Compl. ¶ 21. No detail is given on what "other possibilit[ies]" -- if any -- Cherny and his counsel actually eliminated before filing this action.

In particular, the Complaint does not explain how Cherny and his counsel eliminated the very real possibility that the unidentified third party maintaining Cherny's email server was responsible for disclosing the Email Address. Nor does the Complaint explain how Cherny and his counsel eliminated the myriad additional possible causes for the alleged spam that have nothing to do with Emigrant, such as a computer virus or a hacker, to name just two of the more obvious possibilities. The Complaint merely concludes that the only possible explanation for the spam is Emigrant's alleged disclosure of the Email Address. Compl. ¶¶ 21, 23.

4

### B.    The Theoretical Security Breach

In addition to Emigrant's alleged release of the Email Address, Cherny further alleges that there also *may* have been a broader security breach that exposed other information about Cherny's account.  Compl. ¶¶ 1, 25, 28.  However, the Complaint does not allege that any of this additional information -- such as his name, gender, address, birth date, telephone numbers, email address, citizenship status, mother's maiden name, Social Security number, driver's license number, or third-party financial institution account information -- was actually disclosed to any third parties.  Nor does the Complaint allege that a security breach of this other information actually occurred.  All the Complaint alleges is that if Emigrant had a security breach with respect to the Email Address, it must have also had a breach with respect to the other account information.  *Id.* ¶ 28.

### C.    Violations of Emigrant's Privacy Statement

The Complaint further claims that Emigrant's supposed release of the Email Address and theoretical disclosure of other account information violated Emigrant's Consumer Privacy Policy (the "Privacy Statement").  Compl. ¶¶ 2, 44-45.  In the Privacy Statement, Emigrant states that it will not disclose to third parties the "personal and financial information" of accountholders.  *Id.* ¶¶ 16, 24.  However, Cherny does not allege that an accountholder's email address is either "personal" or "financial" information covered by the Privacy Statement.  In fact, the only reference in the Complaint as to whether email addresses are subject to any kind of special protection is Cherny's concession that they are NOT subject to New York's Information Security Breach and Notification Act.  *Id.* ¶ 28.

## III.    THE ALLEGED INJURY

The Complaint alleges monetary damage claims against Emigrant that exceed the sum of $5 million in the aggregate.  Compl. ¶ 7.  However, the Complaint provides no detail on how this

106206.1

minimum figure was derived or on how Cherny or other purported Class members suffered any

monetary damage or injury (warranting equitable or injunctive relief) from Emigrant's alleged

misconduct. The only allegations relating to Cherny's alleged injury involve vague references to

speculative, unsubstantiated, unquantified, and unquantifiable harm:

- <u>Lost Value of Account Balance</u>. The Complaint alleges that "[t]he value of Class members' account balance with Emigrant has been impaired by the loss of the benefit of the bargain, which was premised, in part, on Defendants' compliance with the Privacy Statement and full disclosure of facts relevant to the security of accountholders' information." Compl. ¶¶ 49, 59, 67. However, the Complaint fails to allege what, if any, loss Cherny actually suffered in the value of his Emigrant account that was caused by Emigrant's alleged misconduct. Nor does it allege how Emigrant's alleged misconduct led to any such loss. Nor does it even allege that Cherny suffered any actual bank account losses.

- <u>Lost Time and Computer Resources</u>. The Complaint also alleges that Cherny and the Class have been damaged from the "lost time required to sort, read, discard and attempt to prevent future Traced Spam, and lost storage space, Internet connectivity, processing power and computing resources on the personal computers on which they received the Traced Spam." Compl. ¶¶ 49, 59, 67. However, the Complaint fails to specify the amount of lost time, Internet connectivity, processing power, and computing resources Cherny allegedly lost from the few hundred spam messages Emigrant allegedly caused over some unspecified period of time since mid-2006, and what -- if any -- monetary damages Cherny suffered from these alleged losses.

- <u>Lost Value of Private Information</u>. The Complaint also alleges that "Class members have incurred damages by the lost or diminished value of their personal and private information and/or conversion of their personal and private information, which is no longer confidential." Compl. ¶¶ 49, 59, 67. However, the Complaint does not allege what, if any, loss Cherny actually suffered in his private and personal information; what, if any, personal and private information of Cherny has actually been compromised from Emigrant's alleged misconduct; and what, if any, value Cherny's personal and private information actually has.

## IV.    THE CLASS ALLEGATIONS

Cherny brings this action "on behalf of himself and all persons who are accountholders of

Emigrant." Compl. ¶ 32. By definition, Cherny therefore includes within the purported Class

those Emigrant accountholders that do not even hold accounts with EmigrantDirect. He

106206.1

similarly includes within the purported Class those Emigrant accountholders that have not been subject to any of the challenged conduct. *Id.*

According to Cherny's class definition, if an individual has an Emigrant account (whether or not it is an EmigrantDirect account), it has automatically been subject to and harmed by the alleged misconduct. Cherny's sweeping allegations in this regard would include accountholders that have not even received any spam or had any account information improperly disclosed by Emigrant. It would also include all accountholders regardless of whether they use spam blockers, what type of email address or account they use, and whether their addresses or accounts were unique to Emigrant or shared with or made publicly available to other parties.

## V.    CLAIMS ASSERTED

Based on the foregoing allegations, the Complaint alleges four claims for relief against Emigrant: (i) violation of Section 349 of New York's General Business Law; (ii) breach of fiduciary duty; (iii) breach of contract; and (iv) fraud, fraudulent concealment, constructive fraud, and/or negligent misrepresentation. Compl. ¶¶ 39-76.

### A.    New York GBL Section 349

Cherny's Section 349 claim is premised on Emigrant's alleged misrepresentations and omissions of "certain material facts in its Privacy Statement." Compl. ¶ 40. However, other than rote references to the Privacy Statement relating to the treatment of accountholders' personal and financial information, the Complaint does not specify the misrepresentations and omissions Emigrant allegedly made. Nor does it identify any information other than the Email Address -- let alone personal and financial information -- that was subject to the alleged misrepresentations and omissions.

106206.1

### B.    Breach of Fiduciary Duty

Cherny's breach of fiduciary duty claim is based on Emigrant's alleged disclosure of Cherny's personal and financial information and its related alleged violations of the Privacy Statement. Compl. ¶ 58. Yet again, the Complaint fails to identify the personal and financial information -- if any -- that Emigrant actually disclosed. It also fails to allege the requisite elements for establishing that a fiduciary relationship even existed between Emigrant and Cherny.

### C.    Breach of Contract

Cherny's breach of contract claim is based on the allegation that "Emigrant's Privacy Statement constituted a contract between" Cherny and Emigrant and that Emigrant breached this alleged contract by disclosing Cherny's personal and financial information. Compl. ¶¶ 62, 65. Other than the Email Address, the Complaint again fails to identify any information Emigrant disclosed. In addition, it fails to make any allegations that support the claim that the Privacy Statement represents a contract between Cherny and Emigrant. The Complaint also fails to provide any detail on the Internet Banking Agreement which is the contract that supposedly governs the scope of the rights and obligations of Cherny as an Emigrant accountholder. *Id.* ¶ 10.

### D.    Fraud/Negligent Misrepresentation

Cherny's final claims of fraud, fraudulent concealment, constructive fraud, and/or negligent misrepresentation are based on the alleged falsity of the Privacy Statement. Compl. ¶¶ 72-74. However, as with Cherny's Section 349 claims, the Complaint fails to identify any provisions of the Privacy Statement that were allegedly false. It also fails to identify any special

8

106206.1

relationship between Emigrant and Cherny that would impose on Emigrant any special duty to Cherny.

**ARGUMENT**

**I.    THE 12(b)(6) STANDARD**

A Rule 12(b)(6) dismissal of a complaint for failing to state a claim is proper where the "plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While the court must accept the allegations in the complaint as true, "bald assertions and conclusions of law" will not defeat a motion to dismiss. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996). As the Supreme Court made clear last year, "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting FRCP 8(a)(2)).

Under *Twombly*, a complaint must provide allegations that meet a standard of plausibility, alleging "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1970, 1974. If the plaintiff does not "nudge [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 1974. A complaint that alleges facts that are equally consistent with both legitimate and illegal conduct -- like the Complaint at issue here read in the most positive light -- does not cross this line. *Id.* at 1964 (dismissing antitrust conspiracy claim on grounds that allegations of parallel conduct, though "consistent with conspiracy," were "just as much in line with a wide swath of rational and competitive business strategy"). Indeed, this kind of complaint, which sets forth no facts of actual wrongdoing and relies only on speculation and conjecture, is exactly the type of pleading the Supreme Court was seeking to target for dismissal in *Twombly*.

9

## II.    EACH OF CHERNY'S CLAIMS FAILS UNDER *TWOMBLY*

Each of Cherny's claims hinges on Emigrant's alleged improper disclosure of the Email Address and on Emigrant's theoretical disclosure of additional so-called personal and private information.  The Complaint provides no allegations -- other than conclusory ones -- that if taken as true would demonstrate that Emigrant actually caused any such disclosures.  The allegations Cherny does make prove just the opposite; that Cherny simply does not know if Emigrant was in any way responsible for the alleged disclosures.

As to Emigrant's alleged disclosure of the Email Address, Cherny concedes that his claims against Emigrant are based on pure speculation.  Cherny does not allege that Emigrant actually disclosed the Email Address to third parties who then sent Cherny the alleged spam messages.  Rather, the allegation is based on the "eliminat[ion]" by Cherny and his counsel of what they believe to be any other possible cause for the spam.  Compl. ¶ 21.  The Complaint does not explain what these other possibilities are -- and there are many -- and how Cherny and his counsel eliminated them.  The Complaint then leaps to the conclusion that the spam itself is "indelible proof" of Emigrant's supposed wrongdoing.  *Id.* ¶ 23.  This kind of tautology does not even come close to crossing the *Twombly* plausibility threshold and should not be the basis for subjecting Emigrant to "the potentially enormous expense of discovery" if this case is allowed to proceed.  127 S. Ct. at 1967.  *See also id.* at 1966 (emphasizing that deficient pleadings, like this one, should "be exposed at the point of minimum expenditure of time and money by the parties and the court") (internal quotes omitted).

Cherny's claims that Emigrant disclosed other information in addition to the Email Address are even more shaky.  In fact, the Complaint does not even allege that any of this additional information -- address, birth date, telephone number, mother's maiden name, Social

Security number, driver's license number, and the like -- was even disclosed by anyone other than Cherny. It merely claims that it might have been. *See, e.g.,* Compl. ¶ 1 (Emigrant's alleged conduct "may indicate a systematic security breach"); *id.* ¶ 23 ("Potential Ongoing Security Breach at Emigrant . . ."); *id.* ¶ 28 ("[i]f there is a security breach . . ."). This again falls far short of what *Twombly* requires.

Taken in a light most favorable to Cherny, the Complaint alleges *at best* that it was just as likely as not that Emigrant disclosed the Email Address and other information.[1] Such an equivocal claim is exactly what the Supreme Court condemned in *Twombly. See* 127 S. Ct. at 1964 (noting the "ambiguity" and thus insufficiency of making allegations consistent with both unlawful and lawful activity); at 1972 (pointing to "an obvious [lawful] alternative explanation" for alleged misconduct); at 1966 (noting that alleged conduct "could just as well [reflect] independent action" as an unlawful agreement); at 1966 (noting that allegations cannot be "conclusory" and "must be placed in a context that raises a suggestion of" illegal conduct); at 1966 n.5 ("The border . . . between the factually neutral and the factually suggestive . . . must be crossed to enter the realm of plausible liability.").[2]

## III.    EACH OF CHERNY'S CLAIMS ALSO FAILS FOR NOT ALLEGING A LEGALLY COGNIZABLE INJURY

Actual injury is a required element of each of the claims Cherny has asserted against Emigrant. *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (identifying actual injury as required element for establishing Section 349 claim); *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004) (identifying same for breach of fiduciary duty

---

[1] Given all of the other possible causes for the spam that have nothing to do with Emigrant -- with the unidentified third party maintaining Cherny's email server heading the list -- it is actually much more likely that Emigrant had nothing to do with the alleged spam.

[2] *See also In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 (2d Cir. 2007) (dismissing price-fixing conspiracy claim because, among other things, allegations of "similar pricing can suggest competition at least as plausibly as [they] can suggest anticompetitive conspiracy") (citing *Twombly*).

106206.1

claim); *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)

(identifying same for breach of contract claim); *Manhattan Motorcars, Inc. v. Automobili*

*Lamborghini, S.p.A.*, 244 F.R.D. 204, 212, 215 (S.D.N.Y. 2007) (identifying same for

establishing fraud/negligent misrepresentation claims).

Yet, Cherny has failed to assert any injury that he or any purported Class member has

actually suffered from Emigrant's alleged wrongdoing that supports the monetary, equitable, and

injunctive relief he seeks. Cherny claims that the value of his Emigrant account balance has

been diminished, but he does not allege how it has been diminished or by what amount. And, he

certainly does not allege, nor could he allege, that his account lost money because of Emigrant's

purported disclosures. Cherny claims injury from lost time and computer resources, but he fails

to allege the basis for and scope of this supposed loss and any monetary impact it may have had.

And, Cherny claims loss of private information, but without identifying the information lost, how

it was lost, and at what cost, if any.

Cherny's vague and unsubstantiated claims of injury do not support a claim for relief.

They are merely "speculative, possible, and imaginary." *Tractebel Energy Mktg., Inc. v. AEP*

*Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (internal quotes omitted). Or, with respect to

his claims of prospective losses in account value or personal information, they "are solely the

result of a perceived and speculative risk of future injury that may never occur." *Shafran v.*

*Harley-Davidson, Inc.*, No. 07 Civ. 01365, 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008)

(dismissing claims for breach of fiduciary duty, deceptive acts, fraud and negligent

misrepresentation for "fail[ure] to show an actual resulting injury that might support a claim for

damages"). Indeed, the Complaint leaves open the very real (and likely) possibility that the

alleged spam messages are not even "directly traceable" to Emigrant. *Nat'l Mkt. Share, Inc. v.*

*Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir. 2004) (damages that "may be the result of *other intervening causes* . . . cannot be allowed") (internal quotes omitted).

In addition, Cherny's claimed injuries are not even plausible. If Cherny really had been harmed from any misconduct on the part of Emigrant, he would have dropped his Emigrant account long before he brought suit. According to the Complaint, Cherny did not do so. He therefore continued to expose himself to all of the alleged injuries Emigrant's various alleged wrongs have caused him. Such a far-fetched factual scenario cannot pass muster under *Twombly*'s plausibility standard.[3]

## IV.    EACH OF CHERNY'S CLAIMS ALSO FAILS FOR NOT SATISFYING ADDITIONAL ELEMENTS OF THE INDIVIDUAL CLAIMS FOR RELIEF

### A.    The Section 349 Claim Also Fails for Not Alleging Consumer-Oriented Conduct or Any Actual Deceptive Acts

Section 349 of the New York General Business Law "was designed to govern only those marketplace abuses which affect the public interest or also cause injury to the public." *Louros v. Cyr*, 175 F. Supp. 2d 497, 517 (S.D.N.Y. 2001) (internal quotes omitted). It also covers only actual misrepresentations or omissions. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Cherny's meager allegations of deceptive conduct satisfy neither prerequisite of Section 349. Under these circumstances -- and independent of this claim's failings under *Twombly* and for not alleging any injury -- Cherny's Section 349 claim must be dismissed for failing to state a claim.

---

[3]  Cherny's roughly two-year delay in bringing this Complaint raises further questions on its plausibility given the explicit directive in the Internet Banking Agreement to immediately notify the bank (within 60 days at the latest) of any improper account access or activity. *See* Internet Banking Agreement at 3, attached as Exhibit A to the Declaration of Gordon Schnell dated July 31, 2008 ("Schnell Decl."). The Court may consider this document since Cherny cites to it and relies on it in his Complaint (at ¶ 10). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

106206.1

1.     There Is No Allegation of Consumer-Oriented Conduct

Cherny's central claim against Emigrant has little in common with the broad-based

consumer-oriented conduct Section 349 is supposed to cover. Rather, his Complaint is more

akin to a simple dispute between two parties. In fact, that is precisely how Cherny has

repeatedly described it in his Complaint. *See, e.g.,* Compl. ¶ 62 (describing his breach of

contract claim against Emigrant).

This kind of dispute, which is "'unique to the parties'" and without "'broader impact on

consumers at large,'" does not "'fall within the ambit of the statute.'" *Allahabi v. N.Y. Life Ins.*

*Co.*, No. 98 Civ. 4334, 1999 WL 126442, at *1 (S.D.N.Y. Mar. 10, 1999) (quoting *Oswego*, 85

N.Y.2d at 25). *See also Louros*, 175 F. Supp. 2d at 517 (internal quotes omitted) (rejecting

Section 349 claim by depositors against newly formed foreign bank because "[t]he Complaint

allege[d] damages to plaintiffs personally"); *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp.

582, 586 (E.D.N.Y. 1997) ("[T]he injury must be to the public generally as distinguished from

the plaintiff alone."); *Dimovich v. OnBank & Trust Co.*, 662 N.Y.S.2d 644, 644 (4th Dep't 1997)

(finding that accountholder's Section 349 claim against bank for loss stemming from

unauthorized withdrawals failed to demonstrate consumer-oriented conduct).

2.     There Is No Allegation of Actual Deceptive Conduct

Cherny also fails to identify the Emigrant misrepresentations and omissions that form the

basis for his alleged deceptive acts claim. Instead, he merely sets forth various elements of

Emigrant's Privacy Statement, and then baldly alleges that Emigrant failed to follow them. *See*

Compl. ¶¶ 44-45. Such "conclusory allegations . . . are not sufficient to state a claim under

Section 349 in the absence of factual allegations in support thereof." *Lava Trading Inc. v.*

*Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004) (noting that plaintiff "must

106206.1

allege with some specificity the . . . acts or practices that form the basis for the claim").[4]

Nor do the allegations even come close to the "bad faith" or "outrageous" conduct Section 349 was designed to address. *Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 400 (S.D.N.Y. 2001) (noting that "deceptiveness, for the purposes of Section 349, involves acting in bad faith or in an outrageous manner") (internal quotes omitted). *See also Trikas*, 351 F. Supp. 2d at 46 (rejecting Section 349 claim for, among other things, plaintiff's "fail[ure] to adduce any evidence of wilfulness"). Given Cherny's belief that Emigrant's alleged misconduct "was unintentional and the result of a security breach" (Compl. ¶ 29), Cherny's allegations have little, if anything, to do with deceptive conduct.[5]

**B.    The Breach of Fiduciary Duty Claim Also Fails for Not Properly Alleging a Fiduciary Relationship Between Emigrant and Cherny**

Cherny's breach of fiduciary duty claim is based on the existence of a fiduciary relationship between himself and Emigrant. However, the Complaint fails to properly assert any such relationship. That is because under New York law, there is no such relationship between a bank and its customers: "New York law is clear that the usual relationship of bank and customer is that of debtor and creditor." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 122 (2d Cir. 1984). *See also Louros*, 175 F. Supp. 2d at 516 ("[T]he underlying relationship between a bank and its depositor is the contractual one of debtor and creditor.") (internal quotes omitted); *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 316-17 (S.D.N.Y.

---

[4]  *See also Feige v. RCN Corp.*, No. 07 Civ. 8539, 2008 WL 906070, at *1 (S.D.N.Y. Apr. 3, 2008) (dismissing Section 349 claim for failure to demonstrate deceptive conduct); *Jones v. Commerce Bancorp, Inc.*, No. 06 Civ. 835, 2006 WL 1409492, at *5 (S.D.N.Y. May 23, 2006) (dismissing Section 349 claim against bank that failed to prevent fraudulent withdrawals from customer's account because allegations showed no deceptive practice by bank); *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005) (rejecting Section 349 claim based on finding that bank's failure to report plaintiff's credit card account as closed was not a deceptive practice).

[5]  Casting further doubt on Cherny's Section 349 claim is his continued maintenance of an Emigrant account despite his assertion that he would not have opened one had he known of Emigrant's alleged misrepresentations and omissions. Compl. ¶ 43.

106206.1

1999) (finding that bank owed no fiduciary duty to borrower). Nothing in the Complaint suggests that Emigrant and Cherny somehow elevated their arms-length commercial relationship to a higher level.

The Complaint does not even detail the nature of the agreement that actually governed the legal relationship between Emigrant and Cherny. The Internet Banking Agreement, not the Privacy Statement, governs this account relationship. *See* Compl. ¶ 10. It represents "the complete and exclusive agreement between [Cherny] and [Emigrant] related to EmigrantDirect and supplements any other agreement or disclosure related to [Cherny's] accounts."[6] If the parties had envisioned a fiduciary relationship between them, it is in this agreement where this higher relationship would have been spelled out. There is certainly no suggestion that this agreement somehow imposed on Emigrant the fiduciary duty Cherny claims he was owed. A simple review of this agreement plainly shows that it did not.[7]

Cherny cannot simply ignore his contractual relationship with Emigrant and invent a fiduciary relationship through the placement in the Complaint of certain magic catchphrases sounding in fiduciary duty. Cherny has offered no allegations that in any way suggest that "the parties created a relationship of higher trust than would arise from their contracts alone." *Robin Bay Assocs. LLC*, No. 07 Civ. 376, 2008 WL 2275902, at *3 (S.D.N.Y. June 3, 2008) (internal quotes and alterations omitted). "[A]bsent extraordinary circumstances," parties dealing at arms-length in a commercial transaction lack a "relation of confidence or trust sufficient to find the existence of a fiduciary relationship." *Cal Distrib., Inc. v. Cadbury Schweppes Ams. Beverages,*

---

[6] *See* Schnell Decl., Exhibit A at 4.

[7] The Privacy Statement is the only document that Cherny relies on to suggest a fiduciary relationship between him and Emigrant. But, that too contains no provision or suggestion that Emigrant has assumed a fiduciary role with its customers. The only reference to a fiduciary relationship is the portion of the Privacy Statement providing that Emigrant may disclose personal and financial information as permitted by law, including "to a fiduciary on [the customer's] behalf." *See* Schnell Decl., Exhibit B (Privacy Statement) at 3.

106206.1

*Inc.*, No. 06 Civ. 496, 2007 WL 54534, at *9 (S.D.N.Y. Jan. 5, 2007) (internal quotes omitted).

There are no such "extraordinary circumstances" here.[8]

**C.    The Breach of Contract Claim Also Fails for Not Properly Alleging an Enforceable Contract That Has Been Breached**

Cherny's breach of contract claim is wholly premised on his assertion that Emigrant's

Privacy Statement constituted a legally binding contract between himself and Emigrant.

However, Cherny makes no allegations that support the existence of such a contract.  In

particular, he makes no allegations that he and Emigrant reached a "meeting of the minds" on the

scope and application of the Privacy Statement.  *Brady v. Lynes*, No. 05 Civ. 6540, 2008 WL

2276518, at *13 (S.D.N.Y. June 2, 2008).  Nor does he make any allegations of "any offer" or

"any acceptance" on the part of Emigrant and Cherny relating to the elements of the Privacy

Statement.  *Id.*

Indeed, there is nothing in the Complaint that explains how the Privacy Statement ever

could have created a legally binding and enforceable contract between Emigrant and Cherny.

Without these kinds of allegations, the Complaint does not properly allege a valid and binding

contract between Emigrant and Cherny.  Simply calling the Privacy Statement a contract --

which is all Cherny does to support the existence of the alleged contract -- is not enough.  This is

particularly true given that the Internet Banking Agreement, "the complete and exclusive

agreement" between the parties, is not even the subject of Cherny's breach of contract claim.

Under these circumstances -- and independent of this claim's failings under *Twombly* and

for failing to allege any injury -- Cherny's breach of contract claim must be dismissed for failing

to state a claim.  *See, e.g., Combustion Prods. Mgmt., Inc. v. AES Corp.*, No. 06 Civ. 3799, 2007

---

[8]   *See also Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield*, 276 F.3d 123, 130 (2d Cir. 2002) (finding that "[a] debtor-creditor relationship is not by itself a fiduciary relationship," and "when parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances") (internal quotes and alteration omitted).

106206.1

WL 4328829, at *1 (2d Cir. Dec. 10, 2007) (dismissing breach of contract claims for inadequate, vague allegations); *Berman v. Sugo LLC*, No. 07 Civ. 1795, 2008 WL 2414052, at *6 (S.D.N.Y. June 12, 2008) ("[A] claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal.") (internal quotes omitted); *Twinlab Corp. v. Signature Media Servs., Inc.*, No. 99 Civ. 169, 1999 WL 1115237, at *4 (S.D.N.Y. Dec. 7, 1999) ("conclusory assertion of breach is not supported by the facts alleged").[9]

In any event, even if Cherny had alleged facts to support the Privacy Statement as an enforceable contract between the parties, the breach of contract claim must still fail because Cherny has not alleged that Emigrant even violated the Privacy Statement. Nowhere in the Complaint does Cherny allege that the Email Address was covered by the Privacy Statement. And, nowhere in the Complaint does he allege the actual disclosure of any other information covered by the Privacy Statement. Instead, as with his Section 349 and breach of fiduciary duty claims, Cherny merely sets forth various portions of Emigrant's Privacy Statement and alleges that Emigrant failed to follow them. *See* Compl. ¶ 65.

### D. The Fraud/Negligent Misrepresentation Claims Also Fail for Not Satisfying the Heightened Fraud Pleading Requirement or Alleging Any Kind of Special Relationship Between Emigrant and Cherny

#### 1. The Complaint Fails to Satisfy the Heightened Pleading Requirement for Fraud

A claim for fraud must satisfy the heightened pleading requirements of FRCP 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Not only does Cherny fail to provide the extra background and detail necessary to satisfy this stricter standard, he does not even identify the false information that is the subject of his fraud claim.

---

[9] *See also Trikas*, 351 F. Supp. 2d at 46 (noting that "broad statements of company policy do not generally give rise to contract claims") (internal quotes omitted).

Cherny's fraud claims are particularly lacking with respect to Emigrant's alleged fraudulent intent. This is a key element of the cause of action. "[T]o serve the purposes of Rule 9(b)," a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (affirming dismissal of fraud claim for failing to establish "strong inference" of fraud). Cherny has not done so. He has not alleged any facts "to show that defendants had both motive and opportunity to commit fraud," or "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* To the contrary, much of Cherny's Complaint speaks to the unintentional nature of Emigrant's alleged misconduct. *See, e.g.,* Compl. ¶ 23 (Emigrant has acted "either inadvertently or intentionally"); ¶ 29 (alleging "on information and belief, that Emigrant's disclosure . . . was unintentional").

As already discussed, this kind of skimpy pleading dooms all of Cherny's claims generally under *Twombly*, let alone under the more demanding Rule 9(b) standard. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("[a]llegations that are conclusory or unsupported by factual assertions are insufficient" under Rule 9(b)); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) ("Rule 9(b) . . . must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.") (internal quotes omitted); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990) ("[A]n inference that the defendants knew their statements to be false cannot be based on allegations which are themselves speculative."); *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 272 (S.D.N.Y. 2006) ("conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough" to satisfy Rule 9(b)) (internal quotes omitted).

2.    The Complaint Fails to Allege a Special Relationship Between Emigrant and Cherny

To prevail on his fraudulent concealment, constructive fraud, and negligent misrepresentation claims, Cherny must also allege a "special relationship" between himself and Emigrant that would impose on Emigrant a duty to disclose beyond any contractual obligations it has to Cherny under the Internet Banking Agreement. *See Dallas Aerospace Inc. v. CIS Air Corp.*, 352 F.3d 775, 788-89 (2d Cir. 2003) (calling the "special relationship" component a "basic requirement . . . for a negligent misrepresentation tort action"); *Bermuda Container Line Ltd. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 192 F.3d 250, 258 (2d Cir. 1999) (stating that fraudulent concealment claim requires showing a duty to disclose); *Manhattan Motorcars*, 244 F.R.D. at 213 (same); *E. River Sav. Bank v. Sec'y of Housing & Urban Dev.*, 702 F. Supp. 448, 458 (S.D.N.Y. 1988) ("New York courts do not recognize a claim for constructive fraud unless the parties share a special relationship."). Cherny has not alleged any such "special relationship" and corresponding special duty.

As with his fiduciary duty claim, Cherny cannot concoct such a special relationship with Emigrant by simply sprinkling the Complaint with conclusory language about supposed special duties Emigrant owes Cherny. Without any facts to support the existence of such a relationship, these claims must fail. *See Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 252 (2d Cir. 1985) (plaintiff "failed to establish a special relationship between itself and the Bank such as to give rise to a duty to avoid . . . negligent misrepresentations"); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 Civ. 3231, 1998 WL 167330, at *11 (S.D.N.Y. Apr. 8, 1998) ("[D]efendants have failed to plead facts sufficient to infer that a special relationship of care or trust existed [with the] plaintiff . . . necessary to prevail on a claim of negligent misrepresentation."); *Village on Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 531-32

106206.1

(S.D.N.Y. 1996) ("There is no fiduciary duty or privity of contract arising out of the contractual arms-length debtor and creditor legal relationship between a borrower and a bank which would give rise to a cause of action for negligent misrepresentation.") (internal quotes and alteration omitted).[10]

## V.    CHERNY'S CLASS ALLEGATIONS SHOULD ALSO BE DISMISSED OR STRICKEN

Cherny's class allegations should also be dismissed (or stricken) because as defined -- "all persons who are accountholders of Emigrant" (Compl. ¶ 32) -- Cherny's proposed Class could never be certified.  It includes Emigrant accountholders that do not even hold accounts with EmigrantDirect.  It includes Emigrant accountholders that have not been subject to any of the challenged conduct.  It includes accountholders that have not received any spam or had any account information improperly disclosed by Emigrant.  It includes accountholders that have not been injured.  And, it includes accountholders that, purportedly unlike Cherny, use an email address shared with or made publicly available to numerous parties beyond Emigrant.

This supposed Class is far removed from the "precise, objective and presently ascertainable" class that Rule 23 requires. *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) ("[A] proposed class must be clearly defined so that it is administratively feasible for a court to determine whether a particular individual is a member.") (internal quotes omitted).  Indeed, the Second Circuit has specifically "cautioned against certifying over-broad classes" such as this one. *Wright v. Giuliani*, No. 99 Civ. 10091, 2000 WL 777940, at *10 (S.D.N.Y. June 14, 2000). Otherwise, it becomes impossible "to carefully assess the adequacy of the proposed class

---

[10] Furthermore, a negligent misrepresentation claim must be based on misrepresentations that are factual in nature. Statements relating to future conduct or events -- as the statements in the Privacy Statement do -- are not actionable. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187-88 (2d Cir. 2004) ("[A]n alleged [negligent] misrepresentation must be factual and not promissory or related to future events.") (internal quotes omitted).

106206.1

representatives and the typicality of their claims." *Id.* at *11. And, the court runs the risk of certifying a class "the vast preponderance of [which] . . . is simply not affected by the legal issue plaintiffs seek to raise." *Smith v. Schweiker*, 709 F.2d 777, 781 (2d Cir. 1983). That is exactly what Cherny is trying to accomplish here.

Cherny's all-encompassing and indiscriminate Class of all Emigrant accountholders is therefore uncertifiable under any circumstances. As such, the class allegations should be dismissed or stricken. *See, e.g., PFT of Am., Inc. v. Tradewell, Inc.*, 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class action allegations because "the class action representations in the complaint are speculation and were not 'formed after an inquiry reasonable under the circumstances'") (citing FRCP 11(b)).

**CONCLUSION**

For all of the reasons set forth above, Emigrant respectfully requests that the Court dismiss in its entirety Cherny's Complaint.

Dated: July 31, 2008                          Respectfully submitted,

                                              **CONSTANTINE CANNON LLP**


                                              _____
                                              Robert L. Begleiter (RB-7052)
                                              Gordon Schnell (GS-2567)
                                              Alissa Ifowodo (AI-3941)

                                              450 Lexington Avenue, 17th floor
                                              New York, New York 10017
                                              Telephone: (212) 350-2700
                                              Facsimile: (212) 350-2701

                                              *Counsel for Emigrant Bank*

22

106206.1