UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                        :

STACY CHERNY, an individual, on his own    :
behalf and on behalf of all similarly situated,    :
                        :

               Plaintiffs,    :

                        :    Civil Action No. 08-CV-5359 (VM)
         -against-   :

                        :    **AMENDED CLASS ACTION COMPLAINT**

EMIGRANT BANK,    :
a New York State Chartered Savings Bank,    :    <u>DEMAND FOR JURY TRIAL</u>
and DOES 1 to 100, persons unknown,    :

              Defendants.    :

                        :
---------------------------------------------------------X

Stacey Cherny ("Cherny" or "Plaintiff"), by and through his attorneys, brings this class action and alleges the following upon personal knowledge or upon information and belief of his counsel:

## NATURE OF THE CLAIM

1.     This case concerns an unauthorized disclosure of e-mail addresses and other personally identifiable information accountholder by Emigrant Savings Bank ("Emigrant") and its online banking division, EmigrantDirect. Through EmigrantDirect's website, *www.Emigrant-Direct.com*, Emigrant offers online consumers the American Dream Savings Account, a money-market depository account service. Significantly, on that  same website, EmigrantDirect publishes its Consumer Privacy Policy, subtitled "Emigrant's Commitment to Safeguarding Consumer Privacy," which commences with Emigrant's unqualified commitment to maintain the confidentiality of consumers' information (emphasis added):

> At Emigrant, we recognize that our relationship with you is based on trust, and the protection of your private financial information merits the highest priority. That's why we have taken stringent measures and established corporate-wide procedures *that ensure the confidentiality of all of your confidential information*, whether we have received it directly from you or from a third party.

However, in contrast to this and other promises, Emigrant has not ensured the confidentiality of consumers' confidential information.

2.     In fact, in light of problems with its online banking system and conflicts with its online banking service provider, Metavante Corporation, Emigrant has not been in a position to fulfill the more modest information security standards imposed by federal financial privacy laws. Emigrant, by its own admission, has engaged online consumers and accountholders through an inadequately monitored system plagued by ongoing, severe defects and flaws.

Class Action Amended Complaint                    1

3.     As a consequence, Emigrant has allowed account information to be hacked and acquired by persons with demonstrably illicit intent. In addition, EmigrantDirect has failed to notify its accountholders of the unauthorized disclosures and so has deprived the affected individuals of the information they need to attempt to protect themselves from the consequences of Emigrant's failings.

4.     This is a class action brought on behalf of EmigrantDirect accountholders (the "Class"). In Emigrant's disclosure of account information to hackers and phishing-attack spammers and subsequent failure to notify accountholders of the security breach, Emigrant has made negligent and material misrepresentations to consumers and violated its public-facing, online privacy policy, its accountholder agreements and its fiduciary duty to accountholders. Through its acts and omissions, Emigrant has subjected its accountholders to wrongful use of their information, undue risk of further wrongful use of their information, irretrievable loss of privacy, and deprivation of their rightful opportunity to make informed commercial choices and realize the benefits of such informed choices.

5.     On behalf of the Class, Plaintiff seeks equitable relief, damages and injunctive relief under New York General Business Law § 349, and equitable relief and damages for breach of fiduciary duty, breach of contract, and negligent misrepresentation.

## PARTIES

6.     **Plaintiff Stacey Cherny.** Stacey Cherny is a citizen of Canada, the United Kingdom and the United States and is a resident of Hong Kong. His last domestic state of residence was Colorado. Cherny is an Emigrant accountholder. He maintains a domain name, and provides e-mail and web connectivity under that domain. Cherny also provides users of his domain name

with e-mail services (including separate accounts, forwarding, filtering, technical support and disposable accounts).

7.     **Defendant Emigrant Bank.** Emigrant Bank is a New York State chartered savings bank with offices at 5 East 42nd Street, New York, New York 10017 and 13 Croton Avenue, Ossining, New York 10562.

8.     As of December 31, 2006, Emigrant had approximately $13.8 billion in assets and more than $890 million in net worth. In combination with its affiliated regional banks, Emigrant has 650,000 accounts, $17.3 billion in assets, and more than $1.1 billion in worth.

9.     EmigrantDirect is the online banking division of Emigrant. Emigrant offers accountholders money-market accounts with a web-based interface through its EmigrantDirect division, *https://www.EmigrantDirect.com/EmigrantDirectWeb*.

10.     **Defendants Does.** Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of the defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sues such defendants by such fictitious names.

11.     Plaintiff alleges upon information and belief that Doe defendants were at all relevant times acting as Emigrant's agents, ostensible agents, partners, joint venturers and employees, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, or enterprise. However, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with the other allegations.

**JURISDICTION, VENUE AND CHOICE OF LAW**

12.    Emigrant is a New York State-chartered banking association with its principal place of business in New York. Its sole United States offices are in New York, and Emigrant has sole citizenship in the State of New York, pursuant to 28 U.S.C. §1332 and/or U.S.C. §1348. The members of the Class include individuals domiciled in New York and throughout the fifty states and U.S. territories, as well as various foreign states; there is minimal diversity of citizenship between the proposed Class members and Emigrant. The aggregate of claims asserted exceed the sum or value of $5,000,000. This Court has subject matter jurisdiction over this case under 28 U.S.C. §1332(d)(2).

13.    This Court has personal jurisdiction over the Defendant under N.Y. C.P.L.R. § 301 because some of the acts alleged herein were committed in the State of New York and within the geographic boundaries of the Southern District of New York federal judicial district; Defendant is chartered by New York State; and Defendant does business in New York and has systematic and continuous operations in the State of New York.

14.    Venue is also proper before this Court under 28 U.S.C. §§ 1391(a)(1)-(a)(3) and/or 28 U.S.C. § 1391(c).

15.    In addition to the factors recited above, Plaintiff and the other Class members note that EmigrantDirect's Internet Banking Agreement states the following:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York. The relationship established herein shall be governed by the law of the State of New York without regard to the of law provisions thereof. In establishing an account herein, the depositor agrees that the United States courts sitting in the State of New York shall have jurisdiction over it, and that the venue of any such action shall be the Southern District of New York. By opening this account, the depositor hereby waives any objection to such jurisdiction and venue.

*See* "Internet Banking Agreement" at *https://www.EmigrantDirect.com.*

Class Action Amended Complaint                    4

## FACTUAL BACKGROUND

***Emigrant's Acquisition of Consumers' Personal Information***

16.     EmigrantDirect offers the "American Dream Savings Account," a money-market account that accountholders operate via a web-based account management interface. Emigrant first offered this online banking service to consumers on or about January 5, 2005, offering "the highest interest rate in the United States, without fees or minimums," which "proved to be instantly attractive to many consumers." *See* Emigrant Savings Bank, Amended Answer and Counterclaims, ¶¶ 47-48, May 26, 2006, *Metavante Corporation v. Emigrant Savings Bank*, Case No. 05-C-1221 (E.D. Wisc.).

17.     As part of the process of opening an account, new customers must provide EmigrantDirect their personal and private information, including name, gender, current and previous address, birth date, telephone numbers, address, citizenship status, mother's maiden name, Social Security number, driver's license number (or an equivalent), and e-mail address.

18.     In addition, EmigrantDirect accountholders who wish to transfer funds between their American Dream Savings Accounts and their accounts at other institutions must provide EmigrantDirect with information identifying those other accounts.

***Emigrant's Consumer Privacy Policy (the "Consumer Privacy Policy")***

19.     At all times relevant to this Complaint, Emigrant published a Consumer Privacy Policy, directed to consumers on its public-facing website. In the Consumer Privacy Policy, Emigrant represented that it would protect individuals' personal information and not disclose such information to third parties except under prescribed circumstances. In pertinent part, the Consumer Privacy Policy states:

> At Emigrant, we recognize that our relationship with you is based on trust, and the protection of your private financial information merits the highest

Class Action Amended Complaint                    5

priority.  That's why we have taken stringent measures and established corporate-wide procedures that ensure the confidentiality of all of your confidential information, whether we have received it directly from you or from a third party.

. . .

- We treat all personal financial information about you in a confidential manner.  This information may be obtained directly from you, or may be collected from other sources, or may result from applications you process with us.

- We maintain physical, electronic and procedural safeguards to protect customer information.  We utilize state-of-the art technology for this purpose and upgrade, when appropriate, to improve our privacy protection.

- We limit access to your personal and financial information to those of our employees, agents and service providers that are required to have access to it in order to meet your financial needs or conduct our business.

- All of our employees, agents and service providers are responsible for compliance with the policies and procedures we have established to safeguard your personal and financial information.

- Our employees are governed by Emigrant's Code of Conduct, which expressly requires the confidentiality of customer information, and our employees receive training in the importance of adhering to the procedures we've established to assure that confidentiality.

- Our data processing and electronic operations are performed in a secure technical environment that is accessed only by authorized personnel to transact legitimate business operations.

- We maintain electronic safeguards to protect customer privacy on our websites.  This assures that when you conduct your business with us from your home or office, the privacy of your relationship and the information you furnish us online is protected.

- We carefully monitor our compliance with applicable laws and regulations and our internal security policies and procedures.

Consumer Privacy Policy at *https://www.EmigrantDirect.com.*

20.    Emigrant's Consumer Privacy Policy explicitly applies to EmigrantDirect ac-

countholders in that the Consumer Privacy Policy commences with the assertion that it applies

"as long as you maintain an ongoing relationship with us." The Consumer Privacy Policy closes with the statement that it is provided "on behalf of the Emigrant family of companies that offer consumer-related financial services," including "EmigrantDirect (a division of Emigrant Bank, offering certain products and services via the Internet) . . . ." Consumer Privacy Policy at *https://www.EmigrantDirect.com.*

21.     Emigrant ascribed contractual dignity to the Consumer Privacy Policy by stating, in its Internet Banking Agreement with accountholders, that "This Agreement is the complete and exclusive agreement between you and us related to EmigrantDirect *and supplements any other agreement or disclosure related to your accounts including the Deposit Account Disclosures with respect to EmigrantDirect*." Internet Banking Agreement at *https://www.Emigrant-Direct.com* (emphasis added).

***Cherny's Emigrant-Only E-mail Address Spammed***

22.     In or about mid-2006, Cherny provided Emigrant with a unique e-mail address he created specifically for account correspondence with Emigrant (the "Emigrant-Only E-mail Address"). Cherny never published, used or provided the Emigrant-Only E-mail Address to any other person. Cherny, himself, maintains the domain name for the Emigrant-Only E-mail Address and all other e-mail addresses associated with his domain.

23.     Shortly after Cherny provided the Emigrant-Only E-mail Address to Emigrant, he began to receive spam at that e-mail address, as described in more detail below. The spam included phishing attack messages. All told, Cherny received hundreds of spam messages at the Emigrant-Only E-mail Address.

24.     At the same time, none of the other e-mail addresses in Cherny's domain were similarly targeted.

***Emigrant Disclosure of Emigrant-Only E-mail Address***

25.    Plaintiff asserts that Emigrant is responsible for having disclosed the Emigrant-Only E-mail Address to spammers and phishing attackers based on the following:

(a)    Cherny disclosed the Emigrant-Only E-mail Address solely to Emigrant.

(b)    It is highly improbable that Cherny's receipt of spam and phishing attacks is the result of a dictionary attack,[1] given that no other e-mail addresses in Cherny's domain were the subjects of similar spam and phishing attacks.

26.    Based upon information and belief, the source of which is Counsel's examination of online blog and message board postings by persons purporting to be EmigrantDirect account-holders, other accountholders experienced spam attacks similar to those affecting Cherny. Some of these accountholders, like Cherny, had created Emigrant-specific e-mail accounts.

27.    A statistically sound sampling of spam received by Class members is likely to prove, by a preponderance of evidence, that particular messages sent to Cherny's Emigrant-Only E-mail Address were, likewise, sent to all Class members. This correlation is likely because spammers, as a general practice, automate the transmission of digitally identical messages to multiple recipients.

***Emigrant's Disclosure to Parties with Malicious Intent***

28.    In contrast to unsolicited commercial e-mail transmitted by actual businesses for actual products, all or substantially all of the spam messages Cherny received consisted of content characteristic of malicious spammers and phishing attack perpetrators. The nature of the spam messages received by Cherny is dispositive of the fact that his account information was

---

[1] In a dictionary attack, a spammer methodically utilizes software to generate a large number of e-mail address "guesses."

acquired and is being used by persons with illicit malicious intent. Such account information has a readily ascertainable value in the market for illicit information. Because of the effective immutability of certain information, such as Plaintiff's name and social security number, his account information—which is irretrievable—will continue indefinitely to be of value on the illicit information market and be used maliciously.

***Emigrant's Disclosure of Other Account Information***

29.    Typically, an institution maintains customer account profiles in a common database, and records of customers' e-mail addresses reside in the same database as other private and personal information, such as account number, social security number, address, and phone number. Thus, it is highly likely that the hacker or hackers who acquired accountholders' e-mail addresses also acquired other account information. Such account information would constitute information categorized as personally identifying and "personal," "private," and/or "nonpublic" under *Interagency Guidelines* Establishing. Standards for *Safeguarding* Customer Information, 12 CFR 332; the New York State Information Security Breach and Notification Act, NY GBL § 899-aa (2007); and the plain meaning ascribed those terms by the parties' disclosures, agreements, and course of conduct.

30.    In addition, it is likely that EmigrantDirect's online banking system, including its accountholder information databases, suffered from numerous, avoidable security vulnerabilities exploitable by hackers. Based upon information and belief, the source of which is the Amended Answer and Counterclaims filed on May 26, 2006 by Emigrant Savings Bank in the matter of *Metavante Corporation v. Emigrant Savings Bank*, Case No. 05-C-1221 (U.S. Dist. Ct., E.D. Wisc.), Emigrant's online banking system, provided by Metavante Corporation, suffered from serious, ongoing hardware and software "defects and failures" in a "seriously flawed system"

that "continued to plague Emigrant through 2006." *Id*., ¶¶ 58-59. Emigrant engaged in an ongoing process of installing workarounds to keep its online banking system running. (¶¶ 53-54). In April of 2006, "Emigrant still found itself making Metavante aware of flaws in its system indicating that Metavante was not sufficiently monitoring the system." *Id*., ¶ 58.

31.    Where, as here, a system suffers from a pervasive and ongoing series of failures in its critical functions, it is highly improbable that Emigrant would have been in a position to perform the level of information security vigilance it promised in its Consumer Privacy Policy. To the contrary, based on Emigrant's allegations in its counterclaims against Metavante, it is far more likely that Emigrant's and Metavante's personnel—who were meeting the challenges of supporting even basic systems functions—would not have accorded the time and resources necessary to adequately identify, evaluate, and mitigate security vulnerabilities at the network, endpoint, and application levels of this complex system.

***Emigrant's Violation of its Absolute Assurances of Privacy and Confidentiality***

32.    Emigrant, in its Consumer Privacy Policy, chose to offer consumers an unqualified promise of confidentiality, stating:

> [W]e have taken stringent measures and established corporate-wide procedures *that ensure the confidentiality of all of your confidential information*, whether we have received it directly from you or from a third party.

This language is unusual in its absoluteness and is not typical of other financial institutions' privacy policies. Similarly, Emigrant's Consumer Privacy Policy states:

> We maintain electronic safeguards to protect customer privacy on our websites. This *assures* that when you conduct your business with us from your home or office, *the privacy of your relationship and the information you furnish us online is protected*.

Consumer Privacy Policy at *https://www.EmigrantDirect.com* (emphasis added).

Class Action Amended Complaint                    10

33.    Emigrant, in the first sentence of its Privacy Policy, acknowledged the materiality of these representations for consumers, stating, "At Emigrant, we recognize that our relationship with you is based on trust, and *the protection of your private financial information merits the highest priority*." Consumer Privacy Policy at *https://www.EmigrantDirect.com.*(emphasis added).

***Emigrant's Other Misrepresentations regarding its Security Practices***

34.    Cherny's receipt of spam, traceable to Emigrant's unauthorized disclosure, demonstrates with high probability that Emigrant failed to implement reasonable safeguards to protect its accountholders' personal information from reasonably anticipated threats to the security and confidentiality of such information. Accordingly, Emigrant engaged in misrepresentation when it made the following statements:

> At Emigrant, we recognize that our relationship with you is based on trust, and the protection of your private financial information merits the highest priority.
>
> . . .
>
> All of our employees, agents and service providers are responsible for compliance with the policies and procedures we have established to safeguard your personal and financial information.
>
> . . .
>
> We maintain physical, electronic and procedural safeguards to protect customer information.  We utilize state-of-the art technology for this purpose and upgrade, when appropriate, to improve our privacy protection.
>
> . . .
>
> Our data processing and electronic operations are performed in a secure technical environment that is accessed only by authorized personnel to transact legitimate business operations.
>
> We maintain electronic safeguards to protect customer privacy on our websites.  This assures that when you conduct your business with us from your home or office, the privacy of your relationship and the information you furnish us online is protected.

We carefully monitor our compliance with applicable laws and regulations and our internal security policies and procedures.

Consumer Privacy Policy at *https://www.EmigrantDirect.com*

***Emigrant's Failure to Notify Accountholders of the Breach***

35.    Emigrant failed to notify accountholders of the breach of their information. Upon information and belief, the source of which is online blog postings by at least one purported accountholder, Emigrant was aware of the breach. The accountholder states that he contacted Emigrant by email regarding spam sent to his Emigrant-only account, and received a response in which Emigrant apologized for the inconvenience and stated, "We are aware of the situation and are investigating the matter."

***Disclosure of Accountholder Information was Intentional.***

36.    Plaintiff alleges, on information and belief, that Emigrant's disclosure of its accountholders' addresses was unintentional and the result of a security breach. In the alternative, Plaintiff alleges that disclosure of its accountholders' addresses was intentional.

## CLASS CERTIFICATION ALLEGATIONS

37.    Plaintiff seeks certification of a Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

38.    The Class asserts claims for violations of section 349 of New York's General Business Law, breach of fiduciary duty, breach of contract, and negligent misrepresentation on behalf of all accountholders. Each of these causes of action is deemed an alternative theory whenever not doing so would result in a contradiction with or among other causes of action,

*Definition of the Class*

39.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Cherny brings this Complaint against Emigrant on behalf of himself and all persons who are accountholders of Emigrant. Excluded from the Class are: (a) any judges or magistrates presiding over this action and members of their families; (b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entities in which Defendants or their parents have controlling interests and their current and former employees, officers and directors; (c) persons who properly execute and file timely requests for exclusion from the class; and (d) the legal representatives, successors and assigns of any such excluded persons.

*Adequate Representation*

40.     Plaintiff shall fairly and adequately represent and protect the interests of the members of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

*Class Numerosity*

41.     Members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is and is not available to Cherny, but it is clear that individual joinder of all Class members is impracticable. As stated above, Emigrant had approximately 650,000 accounts as of December 31, 2006.

*Predominance and Superiority*

42.     This class action is appropriate for certification because class proceedings are superior to all others available for the fair and efficient adjudication of this controversy. The damages suffered by each individual member of the Class will likely be relatively small, espe-

cially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' conduct. It would be virtually impossible for the Class members individually to obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain individual litigations, it would still not be preferable to a class action because, given the complex legal and factual controversies presented in this Amended Complaint, individual litigations would increase the delay and expense to parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Further, a class action fosters economies of time, effort and expense and promotes uniformity of decisions.

### Policies Generally Applicable to the Class

43. This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class members uniformly, and Plaintiffs' challenges of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

### Class Typicality

44. Cherny's claims are typical of the claims of other Class members, as Cherny and the other Class members sustained damages arising out of Defendants' wrongful conduct, based upon the same transactions and conduct uniformly involving and affecting Cherny and the other Class members.

*Class Commonality*

45.    Common questions of fact and law exist as to all Class members and predominate over questions affecting individual Class members. These common questions include, but are not limited to, the following:

(a)    Whether Defendant exposed or provided personal account information of the Class members to unauthorized third parties, including hackers and spammers;

(b)    Whether such exposure violated Defendant's Consumer Privacy Policy;

(c)    Whether such exposure was intentional or unintentional on Defendants' part;

(d)    Whether the Consumer Privacy Policy was fraudulent or misleading in any way;

(e)    Whether the Consumer Privacy Policy contained material misrepresentations or omitted material representations;

(f)    Whether Defendants intended the consuming public to rely on Defendant's Consumer Privacy Policy;

(g)    Whether Defendant's Consumer Privacy Policy was an unlawful, unfair, deceptive and/or fraudulent business practice under New York's General Business Law § 349;

(h)    Whether owed the Class members a fiduciary duty by its collection of personal and private information under the Consumer Privacy Policy;

(i)    Whether Defendant breached such fiduciary duties through the violation of its Consumer Privacy Policy;

(j)    Whether Defendant failed fully and accurately to disclose the exposure and provision of Class members' personal and private account information;

Class Action Amended Complaint                    15

(k)     Whether Defendant's failure to disclose any security breach was unlawful under New York State General Business Law § 899-aa;

(l)     Whether, in light of its fiduciary duties, Defendant's failure to disclose any security breach violated its fiduciary duties to the Class members;

(m)     Whether the Consumer Privacy Policy is or is part of a valid contract;

(n)     Whether Defendants' exposure of the Class members' personal and private information and other conduct constituted a breach of the contract;

(o)     Whether Defendants' misrepresentations and/or omissions in the Consumer Privacy Policy and lack of breach notification constituted negligent concealment; and

(p)     Whether Plaintiff and the Class are entitled to relief, and the nature of such relief.

## COUNT I: VIOLATION OF SECTION 349 OF NEW YORK GENERAL BUSINESS LAW: DECEPTIVE ACTS AND PRACTICES

46.     Plaintiff incorporates the foregoing allegations by reference.

47.     Defendants intended the consuming public to rely on the accuracy of Emigrant's Consumer Privacy Policy which, on its face, is directed at consumers. Defendants misrepresented and/or omitted mention of certain material facts in their Consumer Privacy Policy.

48.     Defendants' conduct as alleged herein is inconsistent with 15 U.S.C. § 6802 (the Gramm-Leach-Bliley Act, regarding disclosure of nonpublic personal information by financial institutions) and the *Guidance on Response for Unauthorized Access to Information and Customer Notice,* 68 Fed. Reg. 47,954 (Aug. 12, 2003).

49.     The misrepresentations and omissions with regard to Emigrant's Consumer Privacy Policy were likely to mislead a reasonable consumer, and Plaintiff and the Class were deceived by such misrepresentations omissions.

50.     The terms of the Consumer Privacy Policy and the security of accountholders' personal and private information were material to consumers deciding to utilize Emigrant's services. Plaintiff and the other Class members would not have opened accounts, deposited their account balances, provided personal information to Emigrant had they known of the misrepresentations and omissions contained the Consumer Privacy Policy and the full nature of the facts relevant to the security of accountholders' personal and private information.

51.     Among other things, Defendants made misrepresentations or omissions of material fact in its Consumer Privacy Policy regarding: (a) Defendants' according of highest priority to their protection of accountholders' financial information and committing to ensure the confidentiality of and assure the protection of such information; (b) Defendants' ensuring of confidentiality through its exercise of stringent measure and corporate-wide procedures; (c) Defendants' maintenance of physical, electronic and procedural safeguards to protect accountholders' information; (d) Defendants' utilization of state-of-the-art technology to protect customer information; (e) Defendants' limiting of access to appropriate authorized parties; (f) Defendants' personnel and service provider compliance with policies and procedures for safeguarding information; (g) the security and access controls of the technical environment used to transmit, store and process accountholders' information; (h) Defendants' maintenance of electronic safeguards to protect accountholders' information; (i) Defendants' monitoring of its compliance with its internal security policies and procedures.

52.     For example, the Consumer Privacy Policy was deceptive in that it concealed the facts that Defendants were (1) disclosing accountholders' personal, private, and confidential information to third parties, including the disclosure of its accountholders' e-mail addresses and other account information to hackers and spammers; (2) not maintaining physical, procedural safeguards to protect customer information; (3) not limiting access to the Class members' personal financial information to those of Emigrant's agents and service providers that are required to have access to it in order to meet the Class members' financial needs or to conduct Emigrant's business; (4) not performing processing and electronic operations in a secure technical environment that is accessed only by authorized personnel performing legitimate business operations; (5) not maintaining electronic safeguards to protect customer privacy on Emigrant's websites; and (6) not assuring that the privacy of the Class members' relationship with Defendants and the information furnished by Class members to Emigrant online was protected.

53.     The above misrepresentations and/or omissions constitute unlawful, unfair, deceptive and fraudulent business practices.

54.     Defendants' conduct constitutes acts, uses and/or employment by Defendants and/or their agents or employees of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, and/or the knowing concealment, suppression, and/or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of services, and with the subsequent performance of services and transactions, in violation of section 349 of New York's General Business Law.

55.     Defendants' acts and omissions were generally directed at the consuming public, including accountholders.

56.     The unfair and deceptive trade acts and practices of Defendants have directly, foreseeably, directly and proximately caused damages and injury to Plaintiff and the other members of the Class.

57.     Defendants' violations of section 349 of New York's General Business Law have damaged Plaintiff and the other Class members, and threaten additional injury if the violations continue.

58.     Defendants' acts and omissions, including Defendants' misrepresentations, have caused harm to Class members in that: (a) Class members have suffered the loss of privacy through the exposure of the personal and private information; (b) Class members have suffered undue risk in the acquisition and/or conversion of their confidential information by hackers and spammers with illicit and malicious intent; (c) Class members have suffered harm in the acquisition and/or conversion of their confidential information by hackers and spammers, given that such information has value in illegal information markets; (d) the value to Class members of the EmigrantDirect account balances has been impaired by the loss of the benefit of the bargain, which was premised, in part, on Defendants' compliance with the Consumer Privacy Policy and full disclosure of facts materially relevant to the security of information; (e) Class members have been, by Defendants, forever deprived of the opportunity to choose to preserve the benefit of the bargain through patronage at an institution that does not engage in such acts, omissions, and material misrepresentations; (e) Class members have been, by Defendants, forever deprived of the opportunity to choose to protect their privacy interests—acknowledged as material by Defendants— through patronage at an institution that does not engage in such acts, omissions, and material misrepresentations.

59.     Plaintiff and the other members of the Class have no adequate remedy at law.

60.    Plaintiff, on his own behalf and on behalf of the Class members, seeks damages, injunctive relief, including an order enjoining Defendants' § 349 violations alleged herein, and court costs and attorneys' fees, pursuant to NY CLS Gen Bus § 349.

## COUNT II: BREACH OF FIDUCIARY DUTY

61.    Plaintiff incorporates the foregoing allegations by reference.

62.    Defendants possessed exclusive knowledge and expertise with respect to Emigrant's handling and protection of accountholders' personal and private information, and therefore, Plaintiff and the Class members reasonably relied on Defendants' superior knowledge and expertise. Among other things, Plaintiff and the Class members reasonably relied on the accuracy of the Consumer Privacy Policy and its explicit recognition of a relationship "based on trust" in which "protection of your private financial information merits the highest priority." Plaintiffs relied on Defendants to act in accordance with the Consumer Privacy Policy terms set forth by Defendants.

63.    Through use of the Consumer Privacy Policy and acceptance of its terms, Defendants solicited Plaintiff and the members and were empowered with the responsibility of safeguarding accountholders' personal and private information.

64.    Defendants were aware that the Consumer Privacy Policy was to be used for particular purposes and that potential accountholders would rely on Defendants to act in accordance with the Consumer Privacy Policy. Thus, Defendants owed a duty to the accountholders to protect their personal and private information for the benefit of the accountholders.

65.    Plaintiff and the Class members reposed trust and confidence in Defendants, who exercised discretionary functions for the benefit of Plaintiff and the Class members. Such discretionary functions included, without limitation: (a) the treatment of the accountholders' personal

and financial information; (b) the employment of physical, electronic procedural safeguards to protect customer information; (c) the control of access to accountholders' personal and financial information; (d) the compliance and enforcement of the terms of the Consumer Privacy Policy; (e) the training and supervision of employees; (f) the performance of data processing and electronic operations; and (g) the maintaining of its websites.

66.     As their bank and/or employees or agents of the bank, Emigrant and the Does owed all Class members a fiduciary duty to safeguard personally identifying, private information. Defendants further owed a fiduciary duty to disclose material facts within their knowledge relating to their failure to safeguard such information. Failure to safeguard personal and private identifying information given to Defendant is a material fact because exposure of accountholders' personal and private information and its acquisition by persons with malicious intent subjected accountholders to undue risk of loss of privacy, identity theft, spam, and the permanent deprivation of the opportunity to have avoided such harms.

67.     Among other things, Emigrant breached its fiduciary duties by: (a) disclosing accountholders' personal private information to third parties, including the disclosure of its accountholders' e-mail addresses to spammers; (b) not implementing physical, electronic and procedural safeguards reasonably targeted to protect customer information from reasonably anticipated threats to the security and confidentiality of such information; (c) not limiting access to the Class members' personal and financial information to those of Emigrant's employees, agents and service providers that are required to have access to it in order to meet the Class members' needs or to conduct Emigrant's business; (d) not performing processing and electronic operations in a secure technical environment that is accessed only by authorized transact legitimate business operations; (e) not maintaining electronic safeguards to protect customer privacy

on Emigrant's websites; (f) not assuring that the privacy of the Class members' relationship with Defendants and the information furnished by Class members to Emigrant online is protected; (g) its failure to correct deception created by the Consumer Privacy Policy; and (h) its failure to the extent Emigrant failed to disclose the events that led to the disclosure of its accountholders' e-mail addresses to spammers; and (i) depriving Plaintiff and the Class members of the opportunity to do business elsewhere, had they known of the true facts relating to handling of their personal and private information, and so to avoid the consequences of Defendants' unauthorized disclosures..

68.     Plaintiffs here specifically incorporate the recitations of section 58, above, and apply such recitations to the consequences of Defendants' breach of fiduciary duty.

69.     Plaintiff, on his own behalf and behalf of the other Class members, seeks compensatory damages in an amount to be determined at trial and injunctive or equitable relief (including an accounting and an order enjoining Defendants' ongoing breach, as alleged herein), as well as interest and costs.

## COUNT III: BREACH OF CONTRACT

70.     Plaintiff incorporates the foregoing allegations by reference.

71.     Emigrant's Consumer Privacy Policy constituted a contract between Defendants and the Class members. Defendants undertook contractual obligations by and between Emigrant and the consumers with whom Defendants transacted business by publishing the Consumer Privacy Policy on its website or otherwise disclosing such Consumer Privacy Policy to its consumers and incorporating the Consumer Privacy Policy into the Internet Banking Agreement. Such contractual assurances created an obligation under the contract and a duty on the part of

Defendants and the persons with whom it did business not to act in derogation of the Consumer Privacy Policy.

72.    In consideration of the above contract, Plaintiff and the Class members placed deposits with EmigrantDirect.

73.    Plaintiff and the other Class members read and relied on the Consumer Privacy Policy prior to their becoming accountholders at EmigrantDirect.

74.    Among other things, Defendants breached the contract by: (a) disclosing account-holders' personal and/or private information to third parties; (b) not maintaining physical, electronic and procedural safeguards to protect customer information; (c) not limiting access to the Class members' personal and financial information to those of Emigrant's employees, agents and service providers that are required to have access to it in order to meet the Class members' financial needs or to conduct Emigrant's business; (d) not performing processing and electronic operations in a secure technical environment that is accessed only by authorized personnel to transact legitimate business operations; (e) not maintaining electronic safeguards to protect customer privacy on Emigrant's websites; and (f) not assuring that the privacy of the Class members' relationship with Defendants and the information furnished by Class members to Emigrant online is protected.

75.    But for Defendants' disclosure of the e-mail addresses of Plaintiff and Class members, the illicit spam and phishing attacks would not have been sent to those e-mail addresses. Hence, the transmission of spam to those e-mail addresses was a reasonably foreseeable consequence of Emigrant's disclosure and breach of contract.

76.    Plaintiffs here specifically incorporation the recitations of section 58, above, and apply such recitations to the consequences of Defendants' breach of contract.

77.     Plaintiff, on his own behalf and behalf of the other Class members, seeks injunctive relief (including an accounting and an order enjoining Defendants' ongoing breach, as alleged herein), damages, interest and costs.

### COUNT IV: NEGLIGENT MISREPRESENTATION

78.     Plaintiff incorporates the foregoing allegations by reference.

79.     As alleged above, at all relevant times and through the present, the parties were in a fiduciary or confidential relationship.

80.     At all relevant times and through the present, the Consumer Privacy Policy contained false or omissions of material facts.

81.     At all relevant times and through the present, Defendants failed to notify Plaintiffs of security breaches of which Defendants were aware.

82.     As alleged herein, at all relevant times and through the present, Emigrant posted on its website a Consumer Privacy Policy that contained false information. At the time this representation was made, Defendants knew or should have known the true facts regarding the falsity of the Consumer Privacy Policy, as detailed above, but negligently concealed or misrepresented the true facts.

83.     Defendants' willful or negligent concealment and/or failures to disclose were made with the negligent intent to induce Plaintiff and the other Class members' justifiable reliance, and in fact did so, as evidenced by their utilization of Emigrant's services.

84.     Plaintiff and other Class members, unaware of Defendants' concealment or suppression of said material facts, utilized Emigrant's services, reasonably relying on the misleading representations and omissions of Emigrant. Plaintiff and other Class members could not have discovered, in the exercise of reasonable diligence, EmigrantDirect's failures to disclose. Had

Plaintiff and the other members of the Class known of the concealed facts, they would not have utilized Emigrant's services.

85.     As a proximate result of the foregoing acts and omissions, Plaintiff and the Class have suffered damages and will suffer additional damages if the violations continue, as alleged above. Plaintiffs here specifically incorporation the recitations of section 58, above, which apply to the consequences of Defendants' negligent misrepresentations.

86.     Plaintiff, on his own behalf and behalf of the Class, seeks compensatory and punitive damages in an amount to be determined at trial and injunctive relief or other equitable relief (including an accounting and an order enjoining Defendants' ongoing violations, as alleged herein), and costs.

**WHEREFORE,** Plaintiffs pray that the Court enter judgment and orders in their favor and against Defendants as follows:

(a)     Certifying the action as a class action and designating Plaintiffs and their counsel as representatives of the Class;

(b)     With respect to Counts I, II, III and IV, injunctive and equitable relief for the Class, including an order for accounting and an order enjoining the misconduct alleged herein;

(c)     With respect to Counts I, II, III and IV, compensatory damages in an amount to be determined at trial for the Class;

(d)     With respect to Count I, reasonable costs and attorneys' fees;

(e)     Awarding pre-and post-judgment interest; and

(f)     Granting such other and further relief as the Court may deem just and proper.

Class Action Amended Complaint                25

**JURY TRIAL DEMAND**

The Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated: September 12, 2008

KAMBEREDELSON LLC

By: __S/_____

DAVID A. STAMPLEY

One of the attorneys for Plaintiff Stacey Cherny, individually and on behalf of a class of similarly situated individuals

Scott A. Kamber
David A. Stampley
KAMBEREDELSON LLC
11 Broadway, 22nd Floor
New York, NY 10004
*skamber@kamberedelson.com*
*dstampley@kamberedelson.com*

Jay Edelson
Ethan Preston
KAMBEREDELSON LLC
53 West Jackson Blvd., Ste. 550
Chicago, IL 60604
*jedelson@kamberedelson.com*
*epreston@kamberedelson.com*